Ellen Dowd, Esq.
State Bar Number 141206
2658 Del Mar Heights Road #228
Del Mar, California 92014
(858) 342-8360
Fax (858§ 755-6348
ellendowd@sbcglobal.net

FILED

07 NOV -8 PM 2: 46

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

.BY:            *C P*            DEPUTY

**Attorney for Plaintiff, JILL MARES**

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JILL MARES, mother of CM, a Minor,<br><br>                  Plaintiff,<br><br>v.<br><br>CHULA VISTA ELEMENTARY SCHOOL DISTRICT, a Local Educational Agency<br>                  Defendant. | CASE NO. '07 CV  2 1 4 4  JM  (AJB)<br><br>COMPLAINT FOR ATTORNEY FEES AND COSTS AND FOR INTEREST  FOR VIOLATION OF SETTLEMENT AGREEMENT<br><br>[20 U.S.C. § 1400, ET SEQ.] |

Plaintiff, JILL MARES ("Plaintiff"), Mother of CM, a Minor, alleges against Defendant, CHULA VISTA ELEMENTARY SCHOOL DISTRICT, a local educational agency ("the District") as follows:

### JURISDICTION AND VENUE

1.     This court has original jurisdiction of this action under 28 U.S.C. § 1331 because it arises under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400, et seq., section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Civil Rights Act, 42 U.S.C. § 1983.  This is an action for attorney fees as prevailing party in the State of California, Office of Administrative Hearings, Special Education Division in OAH Cases Number N2006100142, entered on March 21, 2007 and N2007040433 ordered on August 23, 2007.

2.      Jurisdiction is conferred by 28 U.S.C. § 1343.

3.      Venue is proper in the Southern District of California under 28 U.S.C. § 1391 (b) because Plaintiff and the District are located in this judicial district and the claim arose in this judicial district.

4.      Supplemental jurisdiction over the outstanding interest, attorney fees and costs breach of a Settlement Agreement entered into on May 11, 2006, due and payable in September, 2006, yet not paid until August 31, 2007 is afforded as transactionally related claims between the parties, 28. U.S.C. 1367 (a).

5.      Exhaustion of administrative remedies has been satisfied, as Plaintiffs have pursued and exhausted their administrative remedies through the state due process administrative hearing, and have received a final administrative decision with the right to appeal the decision within 90 days pursuant to California Education Code § 56505(i).

THE PARTIES/IDEA PREVAILING PARTY STATUS

6.      Plaintiff is the parent of a 10 year-old girl, CM ("Student") attending 4th grade at Maria Montessori School. Student qualifies for special education under the eligibility category, Other Health Impaired (OHI).

7.      Plaintiff and Student reside within the jurisdictional boundaries of Defendant, Chula Vista Elementary School District.

8.      Defendant, Chula Vista Elementary School District is, at all times relevant to this complaint, a school district duly organized and existing under the laws of the State of California as a local educational agency ("LEA"). At all times relevant to this complaint, The District had responsibility for the provision of education to Student and to discharge all duties imposed upon on the District by law.

9.      The District's offer of a free, appropriate public education (FAPE) on a August 21, 2006 Individualized Education Program ("IEP") was the subject of an Administrative Due Process Complaint filed by the District on October 4, 2006,

OAH Case No. N2006100142, entitled Chula Vista Elementary School District v. CM. An Administrative Due Process Hearing was held on January 29, 2007 and February 1, 2 and 5, 2007. A Decision was rendered against the District, in favor of Student on March 21, 2007. A true copy of the Decision is attached hereto as Exhibit "1".

10.    Based upon the Decision in which the District had not offered or provided a FAPE to Student for the 2006-2007 school year, on April 16, 2007, Student filed an Administrative Due Process Complaint against the District, OAH Case No. N 2007040433, entitled CM v. Chula Vista Elementary School District. Student was seeking reimbursement for educational expenses and related services for the 2006-2007 school year in the amount of $19,814.21.A true copy of the Due Process Complaint is attached hereto as Exhibit "2".

11.    On May 31, 2007, the District sent Student statutory offer of settlement in the amount of $19,814.21. The Settlement Agreement was silent as to prevailing party, dismissal of claims and attorney fees. A true copy of the May 31, 2007 Settlement Agreement is attached hereto as Exhibit "3".

12.    On May 31, 2007 Student, through her mother accepted the settlement of $19,814.21. As this was a compromise of a minor's claim, on June 29, 2007 a Petitioner for Appointment of Guardian Ad Litem was approved, and an Application and Order Approving the $19,814.21 for the minor was set for hearing in Superior Court on July 23, 2007.[1] True copies of the Order Appointing Guardian Ad Litem, Petition for Minor's Compromise are attached hereto as Exhibit "4."

13.    On August 24, 2007, Hon. William S. Cannon, Judge of the Superior Court granted and entered the Order Approving Minor's Compromise. A true copy of this Order is attached hereto as Exhibit "5."

---

[1] This was removed to Federal Court by the District on July 20, 2007, Case No. 07CV1321 JAH (LSP). Pursuant to a Motion For Remand, which was granted on August 17, 2007, the case was remanded and the Hearing on Minor's Compromise was heard on August 24, 2007.

14. The funds in the amount of $19,821.14, representing the educational expenses for Student for the 2006-2007 school year were received and disbursed without reduction for any attorney fees and costs.

15. Plaintiff has presented the District with a compilation of attorney fees and costs incurred as prevailing party in OAH Case Nos. N200600142 and N2007040433, as well as the fees then known for the Minor's Compromise, all of which has remained unpaid.[2]  The District has refused to pay the reasonable attorney fees and costs related to these actions.

## SUPPLEMENTAL CLAIMS

16. Plaintiff incorporates by reference each and every allegation of paragraphs 1 through 15 of the Complaint as though fully set forth hereat.

17. On May 11, 2006, the parties entered into a Settlement Agreement which called for the District to pay $39,250.00 in exchange for releases of educational claims.  Payment by the District was specified to be made within 45 business days of receipt of proof of payment.  A true copy of the 5/11/06 Settlement Agreement is attached hereto as Exhibit "6."

18. The District failed to timely pay Plaintiff the reimbursement sum of $39,250.00, and caused Plaintiff to incur additional costs of collection.

19. On March 9, 2007 the parties entered into another Settlement and Mutual Release Agreement, which reiterated the terms of the 5/11/06 Settlement Agreement, however the District agreed to pay the enhanced amount of $41,700.00 to cover collection costs of Plaintiff.  This payment was specified to be made within 45 business days of full execution of this Agreement.  A true copy of the 3/9/07 Settlement and Mutual Release Agreement is attached hereto as Exhibit "7."

---

[2] The award of attorney fees for the Motion For Remand in the amount of $8,925.00 has been paid by the District.

20. The District failed to pay the $41,710.00 when due, and delayed payment until August 31, 2007, after the aforementioned Order of Remand was issued.

21. By delaying payment twice, and paying an obligation initially due in September, 2006 on August 31, 2007, Plaintiff has incurred loss of use and costs associated with deferring reimbursement of sums due, to Plaintiff's detriment. Additionally, the District has no legally cognizable excuse for its delay in payment. Plaintiff is therefore entitled to interest at the legal rate of 10% per annum, in the amount of $3,986.46, which Plaintiff has demanded, but has not been paid.

FIRST CLAIM FOR RELIEF

For Attorney Fees and Costs

22. Plaintiff incorporates by reference each and every allegation of Paragraphs 1 through 21 of the complaint as though fully set forth herein.

23. As the prevailing party, Plaintiff is entitled to the payment by the District for attorney fees and costs in OAH Case No. N2006001423 pursuant to 20 U.S.C. § 1415.

24. As the prevailing party, Plaintiff is entitled to the payment by the District for attorney fees and costs in OAH Case No. N2007040433 pursuant to 20 U.S.C. § 1415.

SECOND CLAIM FOR RELIEF

25. Plaintiffs incorporate by reference each and every allegation of paragraphs 1 through 24 of the complaint as though fully set forth herein.

26. Based upon the District's unjustified delay in paying Plaintiff the reimbursement amount of $41,710, Plaintiff is entitled to interest in the amount of $3,986.46.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that judgment be entered against the

District, as follows:

1.    For reasonable attorney fees and costs incurred in bringing the underlying administrative hearings, minor's compromise and and in bringing this matter;

2.    For interest on the settlement in the amount of $3,986.46; and

3.    For such other and further relief as the Court may deem just and proper.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against the District, as follows:

1.    For reversal of the Office of Administrative Hearings Decision entered on  October 19, 2007 in favor of the District;

2.    For reasonable attorney fees and costs incurred in bringing the underlying administrative hearing and in bringing this matter, and;

3.    For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: October 31, 2007

Ellen Dowd, Attorney Plaintiff, JILL MARES, Mother of CM

**EXHIBIT 1**

BEFORE THE
OFFICE OF ADMINISTRATIVE HEARINGS
SPECIAL EDUCATION DIVISION
STATE OF CALIFORNIA

| | |
|---|---|
| In the Matter of:<br><br>CHULA VISTA ELEMENTARY SCHOOL DISTRICT,<br><br>         Petitioner,<br><br>v.<br><br>STUDENT,<br><br>         Respondent. | OAH CASE NO.  N2006100142 |

## DECISION

Administrative Law Judge (ALJ) Darrell L. Lepkowsky, Office of Administrative Hearings (OAH), Special Education Division, State of California, heard this matter on January 29, 2007, at the offices of the Chula Vista Elementary School District, and on February 1, 2 and 5, 2007, at the OAH offices in San Diego, California.

Attorney Sundee M. Johnson, Atkinson, Andelson, Loya, Ruud & Romo, appeared on behalf of petitioner Chula Vista Elementary School District (District) on the first three days of hearing. Attorney Justin R. Shinnefield, of the same law firm, appeared on behalf of the District on the final day of hearing. Dr. Deborah Wenbourne, the District's Coordinator of Special Education, attended the hearing on behalf of the District for most of the hearing. During Dr. Wenbourne's brief absence from the hearing, Patricia Ludi, the District's Executive Director of Pupil Services and Instruction, attended on behalf of the District.

Attorney Ellen Dowd, Law Offices of Ellen Dowd, appeared on behalf of respondent (Student). Student's mother attended each day of hearing. Student did not attend.

The District filed a request for a due process hearing on October 4, 2006. Due to a medical emergency, Student requested a continuance of the case, which OAH granted, and the hearing ultimately proceeded on the dates indicated above. At the due process hearing, the ALJ received sworn oral testimony and documentary evidence. At the conclusion of the hearing, the parties agreed that the record would remain open in order for the parties to submit for evidence copies of the tapes of the individualized education plan (IEP) team

meeting held on August 21, 2006, which is the subject of this hearing, as well as for the submission of post-hearing closing briefs. Both parties timely submitted copies of the IEP meeting tapes to the ALJ on or about February 13, 2007.[1] Both parties timely filed their briefs on February 21, 2007. The ALJ closed the record and deemed the matter submitted as of February 21, 2007.[2]

At hearing, the parties stipulated that the Decision in this matter would be due no later than March 21, 2007, four weeks from the date on which post-hearing closing briefs were due.

## ISSUE

Did the District's offer of placement and services contained in Student's IEP dated August 21, 2006, constitute a free and appropriate public education (FAPE) for Student, in the least restrictive environment, for the 2006-2007 school year?

## CONTENTIONS OF THE PARTIES

The District asserts that its IEP placement offer would provide Student at least some educational benefit in the least restrictive environment. While the District acknowledges that there were some procedural errors in the IEP process, it contends that any errors are harmless and thus do not constitute substantive violations of Student's rights under the reauthorized Individuals with Disabilities Education Act of 2004 (IDEA). The District therefore contends that the IEP developed on August 21, 2006, offers a FAPE to Student.

Student contends that the District committed numerous procedural violations during the IEP process that impeded Student's right to a FAPE, significantly impeded the opportunity of Student's mother to participate in the decision-making process regarding the provision of FAPE to Student, and resulted in a deprivation of educational benefits to Student. Specifically, Student asserts that the District did not complete all of the assessments for Student, failed to have a general education teacher at the IEP meeting, and failed to have Student's private school teacher at the meeting. Student further contends that the District offered a "take it or leave it" placement plan which prevented Student's mother from participating in the IEP process, and that the District failed to consider a continuum of placement options for Student. Student also contends that these procedural violations resulted in an incomplete IEP and therefore resulted in a denial of FAPE for Student. Therefore, Student contends that the ALJ should deny the District's request to have the IEP dated August 21, 2006, declared a FAPE.

---

[1] The District submitted four cassette tapes, which were jointly marked and admitted as petitioner's exhibit 10. The auditory quality of the tapes is uneven.  Student submitted three compact diskettes, which were marked and admitted as respondent's exhibit N. The majority of the meeting is audible on this exhibit.

[2] The District's brief was marked and admitted as petitioner's exhibit 11. Student's brief was marked and admitted as respondent's exhibit O.

## PROCEDURAL MATTERS[3]

On or about January 23, 2007, Student filed a motion for judgment on the pleadings. In response to the issuance by OAH of a notice of motion, the District filed an opposition to Student's motion on or about January 26, 2007.

The gist of Student's motion was that the District's failure to include a general education teacher constituted a per se procedural violation of the IDEA, which resulted in a defective IEP that could not be enforced. As evidence of this procedural flaw, Student references the August 21, 2006 IEP that the District included in its evidence notebook. Student also cited to Code of Civil Procedure, section 438, as a statutory basis for permitting her motion.

The District's opposition asserted that the case law cited by Student in her motion indicated that an IEP team meeting *might* be invalidated by the absence of required members, but that factual determinations are needed before such a finding can be made. The District noted that such factual determinations went to the heart of its case.

The ALJ reviewed the parties' briefs and heard argument regarding the motion on the first day of the hearing. The ALJ denied the motion for judgment on the pleadings.[4]

## FACTUAL FINDINGS

*Jurisdictional Facts*

1.     Student was born on December 19, 1997. At the time of the hearing, Student was nine years old and attended a Maria Montessori school. Although Student and her parents have resided within the District's boundaries for many years, she has never attended a District elementary school. Student was found eligible to receive special education services in 2002 under the category of other health impaired (OHI) due to a documented health impairment of epilepsy.[5] The epilepsy was found to negatively influence Student's progress in school by affecting her strength, vitality, and alertness. There is no dispute that Student is eligible for special education services.

---

[3] Official notice is taken of the pleadings filed with regard to the Student's motion for judgment on the pleadings, pursuant to Evidence Code section 452, subdivision (d).

[4] The ALJ also denied Student's renewed motion, made after testimony was received the first day of hearing.

[5] Epilepsy is sometimes referred to as a seizure disorder. It is a common chronic neurological condition that is characterized by recurrent unprovoked seizures. These seizures are transient signs and/or symptoms due to abnormal excessive or synchronous neuronal activity in the brain. Epilepsy is usually controlled, but not cured, with medication.

*Background Information*

2.  The District and Student entered into a settlement agreement on May 11, 2006.[6]  The District agreed to complete a comprehensive assessment plan for Student within 15 days of the execution of the agreement.  Student's mother agreed to allow the District reasonable assess to Student, agreed to make Student reasonably available for assessments, including at Student's present private school placement, and agreed to provide updated health information for Student in a nurse's health form.

3.  Although the time for completing assessments and holding an IEP team meeting is normally tolled during school summer vacations,[7] the parties agreed to convene an IEP meeting prior to the beginning of the 2006-2007 school year.

4.  The District completed the assessment plan (entitled an evaluation plan, using terminology from federal statutes) on May 12, 2006.  Assessments were designated in the areas of academic achievement, psycho-motor development/perceptual functioning, language/speech communication development, cognitive functioning, social/emotional adaptive behavior, a health screening (including a vision and hearing screening), and additional assessment in the form of observation at Student's private school.

5.  Although Student's mother received the assessment plan on or about May 14, 2006, she did not sign and return it to the District immediately.  Rather, she requested the names of the assessors before she would sign the plan.  Being informed of the assessors' identities and/or approving them was not a condition of the settlement agreement nor a legal right given to parents.  However, the District acceded to the request of Student's mother and provided her a list of proposed assessors.

6.  Student's mother signed and returned the assessment plan on or about June 27, 2006.  She indicated on the form that the family would be vacationing beginning August 24, 2006, and that, therefore, the IEP meeting for Student would have to take place prior to that date.

7.  By the time Student's mother signed the assessment plan, both Student's Montessori school and the District's schools, which followed a traditional (approximately late August/early September to mid-June) schedule, were no longer in session.

8.  District employees did not begin to contact Student's mother to arrange for assessment dates until late July or early August 2006.  Assessments did not begin until August 8, 2006.[8]

---

[6] The settlement agreement resolved matters not at issue in the instant proceeding.

[7] See Education Code, section 56043, subdivision (f)(1).

[8] There was a change in assessors for approximately three of the assessments.  However, Student's mother permitted the assessments to proceed.



9.    The District sent the notice of IEP meeting to Student's mother on or about July 12, 2006. The notice set the IEP meeting for August 21, 2006. It also indicated that team members to be present would include a District representative, a coordinator, a speech and language specialist, an occupational therapist, a psychologist, an autism team representative, a special education teacher, and a general education teacher. The IEP took place as scheduled on August 21, 2006. Student's mother has never approved the IEP.

*Procedural Violations That May Constitute a Denial of FAPE*

10.    A school district must comply both procedurally and substantively with the IDEA. While not every procedural flaw constitutes a denial of FAPE, procedural flaws that inhibit a student's right to receive a FAPE, significantly prevent a parent's opportunity to participate in the IEP process, or cause a deprivation of educational benefit to a student, will constitute a substantive denial of FAPE.

11.    The IDEA provides that an IEP must contain a statement of the current levels of educational performance, measurable annual goals, and a means to measure progress towards the goals. Additionally, the IEP team must take into account the results of the student's most recent assessments in formulating the IEP in order to determine the student's present levels of performance and the student's unique needs, and to set appropriate goals. The failure of the IEP to include the required elements is a procedural violation of the IDEA. An IEP that is not properly formulated may also constitute a denial of a FAPE if the IEP thereby fails to address the student's unique needs, or is not reasonably calculated to provide the student with some educational benefit.

12.    The District asserts that it offered a legally adequate FAPE to Student. While acknowledging that there were a few procedural errors in the IEP process, the District asserts that the errors were harmless. Student contends that none of the procedural violations committed by the District amounted to harmless error, and therefore the violations resulted in a substantive denial of FAPE to her.

*Failure to Complete the Assessment Plan*

13.    An IEP required as a result of an assessment plan must be developed within 60 calendar days from the date a district receives a parent's signed consent to the assessment, not including days of school vacation that exceed five school days, unless the parent agrees, in writing, to extend this time. This means that all assessments must be complete by the time an IEP is developed so that the IEP can properly address the student's present levels of performance and unique needs and so that the IEP team can propose appropriate goals for the student.

14.    The District contends that its assessments of Student provided sufficient information in order for it to determine Student's unique needs and to suggest appropriate goals and educational services for Student in order to meet those unique needs. Student contends that the District failed to complete the assessments determined necessary for

Student in the assessment plan and therefore any offer of placement and services to her was deficient based upon lack of adequate information regarding Student's unique needs.

15.    Special education teacher Daneida Cooper administered the Woodcock-Johnson III Tests of Achievement to Student on August 16, 2006. There is no dispute that this academic assessment was fully completed. There is also no evidence that the assessment or its results were not valid. There were no procedural violations of the IDEA with regard to the academic assessment of Student.

16.    Adapted physical education specialist Tammi Sheldon administered an adaptive physical education assessment to Student on August 8, 2006. The assessment consisted of Ms. Sheldon's review of the last IEP written for Student, the administration of the Test of Gross Motor Development, Second Edition, to Student, and observations by Ms. Sheldon of Student's playground skills. There is no dispute that this test was fully completed. There is no evidence that this assessment or the results obtained from it were not valid. There were no procedural violations of the IDEA with regard to the adaptive physical education assessment of Student.

17.    Speech pathologist Ruth Young administered a speech and language assessment to Student on August 16, 2006. Ms. Young included in her assessment report the results of a speech and language assessment administered to Student by Children's Hospital in May 2006. Ms. Young administered the Test of Auditory-Perceptual Skills-Revised to Student. She also administered a test using an informal language sample. There is no dispute that the speech and language testing was not fully completed. There is no evidence that the assessment or its results obtained from it were not valid. There were no procedural violations of the IDEA with regard to the speech and language assessment administered to Student.

18.    An assessment by a District autism coordinated education team was one of the assessments designated in Student's assessment plan dated May 12, 2006. The need for this assessment appears to be based upon an indication that Student may have autistic-like tendencies, such as a tendency to engage in perseveration.[9]

19.    The District assigned school psychologist and itinerant autism specialist Sarah Llorente to conduct the assessment. She did not contact Student's mother until the week prior to the IEP meeting of August 21, 2006. She and Student's mother exchanged phone calls for about five days. Ms. Llorente and Student's mother finally spoke on or about August 18, 2006, the Friday prior to the IEP meeting. Ms. Llorente wanted to arrange an observation of Student for that very day at either Student's home or at her soccer camp. Student's mother refused to consent to the observation. She felt that she was not given

---

[9] The extent of Student's autistic-like behaviors was not at issue in the instant proceeding. Neither party disputed that, whatever characteristics Student may have, an assessment by an autism specialist was appropriate.

adequate notice since Ms. Llorente proposed to do the observation that day. Student's mother also believed that an observation of Student at home or at summer camp was not relevant to the preparation of a school-based IEP.

20.    The assessment that Ms. Llorente proposed consisted solely of observation of Student's social skills. The observation would include Student's interaction with her peers and adults, her ability to transition (from one task and/or setting to another), her organized play, and her adaptive skills.

21.    Neither Ms. Llorente nor any other District representative suggested continuing the IEP meeting to a date after Student returned to the Montessori school so that Ms. Llorente or one of her colleagues could complete a school-based observation of Student. Nor has anyone from the District attempted to arrange an observation of Student at her private school since school started in September 2006. As of the date of the due process hearing, the District had yet to administer the assessment.

22.    An observation by the autism team was a necessary component of Student's assessment plan. The IEP dated August 21, 2006, notes that baselines were still pending in the area of social skills for the classroom. The failure to administer any part of the autism assessment resulted in an inability to determine Student's unique needs in this area and a corresponding inability to propose goals and objectives to address those unique needs, had they been determined to exist. Therefore, the failure to perform this assessment denied a FAPE to Student. Therefore, there were no goals in the proposed IEP that addressed this area of Student's needs.

23.    Occupational therapists Jennifer Canaris and Evangeline (Vangie) Mamalakis conducted an occupational therapy assessment of Student on August 16, 2006.[10] The assessment included a sensory profile completed by Student's mother as well as an interview with her, a review of Student's records, observations of Student with software and technology, and subtests seven and eight of the Bruininks-Oseretsky Test of Motor Proficiency. To be complete, the assessment should have included observations of Student in her classroom and interviews with Student's teacher. The occupational therapists were not able to complete the latter portions of the assessment because the Montessori school was not in session at the time the assessment took place. There is no evidence that the parts of the assessment that the therapists completed or the results they obtained were not valid.

24.    The occupational therapists were not able to give a complete recommendation for occupational therapy support for Student based upon the lack of classroom observation. Their report explicitly states, "Occupational support of [Student's] educational programming and needs will be addressed more specifically following observation of [Student's] performance in the classroom setting." The IEP dated August 21, 2006, states that baselines

---

[10] Ms. Canaris did not testify at the due process hearing.

were still pending for sensory modulation in an academic setting. Since these baselines were still pending based upon lack of information, no goals in these areas could be developed or services recommended in spite of the fact that the IEP recognizes sensory modulation in the classroom as an area of Student's need.

25. The occupational therapist and the IEP document itself both indicate that the occupational therapy assessment had not been completed as of the date of the IEP meeting. Goals and objectives, and appropriate related services necessary to implement them, were incomplete. As of the date of the due process hearing, the District had not completed the occupational therapy assessment. The failure to complete the occupational therapy assessment therefore denied a FAPE to Student.

26. School psychologist Ryan Estrellado administered a psychoeducational assessment to Student on August 8 and 9, 2006. Mr. Estrellado administered the Woodcock-Johnson Tests of Cognitive Abilities, Third Edition, to Student. There is no evidence to dispute either the validity of this test or the results Mr. Estrellado obtained from it.

27. Mr. Estrellado also administered the Behavior Assessment System for Children, Second Edition (BASC-II), to Student. This test is a measure of a student's social emotional adjustment. It consists of surveys that the school psychologist gives to a Student's parent and teacher to complete, as well as to a Student if she is old enough for the resulting responses to be considered valid. Since the Montessori school was not in session, Mr. Estrellado did not give the BASC-II survey to Student's teacher. Mr. Estrellado did not give it to Student to complete herself because of her age.

28. Student's mother reported on the BASC-II that Student has often stated "I want to die" or "I wish I were dead." She also reported that Student often threatened to hurt others. Mr. Estrellado pursued these comments by requesting elaboration from Student's mother. She reported that Student generally made these statements when she was angry and that it was her impression that the statements were due primarily to Student's impulsivity. Student's mother did not indicate to Mr. Estrellado during his interview with her, that Student had ever acted on these feelings or that there was a reason Student's mother believed she would ever act on them in the future. Student's mother did not inform Mr. Estrellado, or any member of the IEP team, that Student had ever engaged in any type of aggressive behavior toward others or had ever tried to harm herself. Student's mother offered no contrary information at the IEP meeting of August 21, 2006, nor did Student offer any evidence at the due process hearing that would indicate that Student had aggressive or self-destructive tendencies.

29. Mr. Estrellado made a professional decision, based upon the information available to him at the time, that Student's remarks about hurting herself or others were not indications of aggressive behavior that required further investigation. Student offered no evidence that would call into question Mr. Estrellado's professional opinion. Therefore, the assessments that Mr. Estrellado administered were adequate for the purposes of FAPE.

30.     However, Mr. Estrellado did note that further assessment was necessary to determine if Student actually had autistic-like tendencies. Therefore, as detailed in paragraphs 18 through 22 above, the area of autistic-like tendencies was an area of need indicated in Student's assessment plan. The District should have completed assessments to address those areas before an IEP was developed. As of the date of the due process hearing, the assessment was still incomplete. As stated in paragraph 22, the failure to complete such assessments denied a FAPE to Student.

31.     Although the assessment plan indicated that vision and hearing[11] screening assessments and a health assessment were to be administered, none was done by the date of the IEP meeting. Student has an acknowledged minor hearing loss as well as visual processing deficits. Her underlying eligibility classification is based upon epilepsy, which is a significant health impairment. At the IEP meeting, Student's mother indicated that she would fill out a health questionnaire once the District provided one to her. She also indicated that Student had recently had a physical, which included a vision screening, and that she would provide these to the District. The District did not suggest continuing the IEP meeting in order that the hearing test be completed and reviewed, or in order to review the information in the health form or vision screening done by Student's private doctors. The failure to review this information resulted in significant gaps in the IEP team's understanding of Student's unique needs and any resulting services or accommodations that she might require because of the those unique needs. The failure to complete the health and vision assessments therefore resulted in the denial of a FAPE to Student.

32.     In sum, as acknowledged in the IEP dated August 21, 2006, baselines for Student were still pending for social skills in the classroom and sensory modulation in an academic setting. The District IEP team recommended that the current assessment plan be continued in the areas of baseline information from observations for sensory needs, motor planning, sensory modulation within an academic setting, and vision and hearing screening. The District's failure to follow its own recommendations to continue the assessment process resulted in the development of an incomplete IEP which could not address all of Student's need and could not, based upon incomplete information, contain complete goals and objectives. Therefore, the IEP of August 21, 2006, is deficient because Student was denied educational opportunities and her right to a FAPE was impeded.

*Failure to Include Student's Private School Teacher at the IEP Meeting*

33.     The failure to include a student's private school teacher in the IEP process, where the student is presently attending a private school, constitutes a procedural violation of the IDEA which results in a denial of FAPE to the student, unless the failure to do so is the result of harmless error.

---

[11] A hearing test was submitted from Children's Hospital. It appears that Student's mother and the District both accepted the results of that test.

34.    There is no dispute that no teacher from Student's private Montessori school attended the August 21, 2006, IEP meeting. The District asserts that it was not able to include the teacher because Montessori was not in session at the time of the IEP meeting and that it had no way, therefore, of attempting to secure his or her attendance. The District further contends that, in any case, the failure to have the private school teacher in attendance was harmless error. Student argues that the District's failure to include the Montessori teacher resulted in a denial of FAPE to her.

35.    The Notice of IEP meeting sent to Student's mother did not show any intent to include any Montessori teacher. Although the Montessori school was not in session, Student and her mother were in email contact with Student's Montessori teacher throughout the summer. The District did not ask Student's mother if there was any way to contact the Montessori teacher and did not suggest that the IEP meeting be continued until after the Montessori school began in September in order to attempt to obtain the participation of the teacher.

36.    Student had never attended a District elementary school. Without input from the Montessori school, the IEP team did not have current information about Student's educational progress. When compounded with the failure to observe Student at her Montessori school and the failure to communicate with the Montessori teacher to obtain input for the assessments, the absence of the private school teacher does not constitute harmless error. The absence of information from the Montessori teacher interfered with the opportunity of Student's mother to participate in the formulation of Student's IEP.[12]

*Failure to Include a General Education Teacher at the IEP Meeting*

37.    A general education teacher, either from the student's current or future educational placement, must participate in the formation of the student's IEP. A harmless error analysis is applied to the failure to secure his or her attendance at the IEP meeting. If the court finds no harmless error, the failure of the general education teacher to participate in the IEP process will result in a finding that the district substantively denied a FAPE to the student.

38.    Current law permits a parent to waive the participation at the IEP meeting of any of the participants who are normally required to be present, including the general education teacher.

39.    There is no dispute that a general education teacher did not attend the IEP meeting. The District offers little explanation for the absence of a general education teacher but asserts that the absence is harmless error. The District points to the fact that several of the educators attending the IEP meeting had general education credentials and the principal

---

[12] Had the Montessori teacher refused to participate in the assessment process or in the IEP meeting, the resulting analysis of these issues would be different.

from the proposed elementary school attended the meeting and was familiar with all the programs at his school. Student contends that the failure to include a general education teacher amounted to a per se violation of the IDEA.

40.    The notice of IEP meeting sent to Student's mother on July 12, 2006, indicated that a general education teacher would be present at the IEP meeting. There was no reason given for the absence of such a teacher when the team convened the meeting on August 21, 2006. The District never requested Student's mother to waive the presence of the general education teacher. The District did not request that the meeting be continued to a future date or that an additional IEP meeting be held in order for the District to ensure that a general education teacher be present.[13]

41.    The Montessori school where Student has attended for her elementary school years provides education to Student in a general education setting. The placement ultimately proposed for Student by the District at Sunnyside Elementary school included education and services to be received in a general education setting for 66 percent of Student's day. In other words, in the proposed placement, Student would be spending the majority of her school day in a general education classroom.

42.    It was therefore necessary for a general education teacher to be present at the IEP meeting to be able specifically to describe the classroom curriculum to Student's mother as well as the classroom dynamics, how Student's program would be implemented in the classroom, and how any proposed modifications for Student would be implemented. Finally, because Student was transferring from a private school setting to a public school setting, the opinions of a general education teacher during the IEP process could have promoted specific discussions about transition, and the development of the transition plan, as well as addressing any concerns of Student's mother. The absence of a general education teacher at the August 21, 2006 IEP team meeting interfered with the opportunity for Student's mother to participate in the formulation of Student's IEP.

*Participation of Student's Mother in the IEP Process*

43.    A school district is required to conduct a meaningful IEP meeting, which includes the ability of a student's parent to participate fully in the IEP process. Full participation includes the school district informing the parent of the child's problems and not only permitting, but inviting, the parent to express opinions and disagreements with the district's recommendations. It also includes involving the parent in revisions to the IEP and to district proposals.

---

[13] There is evidence that the District had difficulty obtaining the presence of a general education teacher for the August 21, 2006, IEP meeting because its schools on traditional schedules were not in session. However, the majority of the educators present at the IEP meeting were from Rogers Elementary School, which was on a non-traditional schedule, and had been in session since approximately July 18, 2006. There was no explanation given by the District as to why one of the general education teachers from Rogers could not have attended the IEP meeting.

44.    Student asserts that the District denied her mother the ability to participate actively in the IEP process because the District failed to consider the full continuum of placements available for Student, specifically, a private school placement, and because the District had predetermined the placement that they were going to offer for Student. The District asserts that it came to the IEP meeting with an open mind to consider a variety of potential placements for Student.

45.    Student's mother was encouraged to participate in the IEP during the entire IEP meeting. District team members asked for her opinions and her questions when each presented the assessments he or she had administered. Student's mother was asked to give input to the process, to give suggestions to the IEP team and to comment about the proposed goals and placement. Although she asked a few questions about the assessments, Student's mother declined to give comments about the goals because she insisted that she wanted to discuss a placement for Student before the team discussed goals and objectives.[14] There is no evidence that Student's mother was discouraged from participating in the IEP process.

*Predetermination of Placement*

46.    A school district may commit a procedural violation of the IDEA if it comes to an IEP meeting without an open mind and several options to offer for discussion with all team members. A district fulfills its obligation in this regard if it does suggest different potential placements, and discusses and considers any suggestions and/or concerns a parent has concerning the child's placement.

47.    A school district is also required to make a formal written offer that clearly identifies its proposed program. It is proper for District IEP team members to discuss among themselves the parameters of programs available to a student and to write a draft of a program they may want to discuss with a student's parents. It is also proper for a district to invite to the IEP meeting educators who are part of a potential program or placement that the district wishes the IEP team to consider.[15]

48.    Student contends that the District had already determined to place Student at Sunnyside Elementary School before it participated in the IEP meeting on August 21, 2006. Student cites to two facts to support her contention: the fact that Student's "home school" was identified as Sunnyside on the assessment, and the fact that the Sunnyside Principal attended the IEP meeting. The District contends that it considered a number of placements, and came to the meeting with an open mind to any suggestions or possibilities.

---

[14] As District representatives pointed out to Student's mother, a student's needs must first be determined, then the goals to address her needs. Only once the needs and goals are determined is it appropriate to determine an appropriate placement where the goals can be implemented.

[15] Indeed, Student seeks a finding that the District committed a procedural violation of the IDEA by failing to have a general education teacher from the proposed school placement attend the IEP meeting.

49.    Principal Schlottman was the only educator from Sunnyside Elementary School who attended the IEP meeting. He gave no indication at the meeting that he had been informed that Student was destined to attend his school, or that his was the only placement that was going to be considered. To the contrary, when he had to leave the meeting early, Mr. Schlottman gave a "pitch" for his school and the variety of programs available there. He specifically stated, "If it turns out that Sunnyside is on the table" he would be glad to have Student attend school there. There was no indication that Sunnyside, or a specific placement at Sunnyside, had been predetermined. The District gave specific reasons why Sunnyside itself was its recommendation, and why it ultimately believed that a general education classroom at that school was appropriate for Student. District educators consistently requested input from Student's mother during the IEP meeting; she chose not to offer any recommendations or suggestions for placement, although she had been aware for over a month of the date the IEP meeting would be held.

50.    The reference to Sunnyside Elementary School in the assessment plan, which the District originally created seven months before the District re-submitted it to Student's mother, was inadvertent. Sunnyside is as close to Student's home as is Student's home school. She had never attended elementary school in the District. The Sunnyside Principal did not consider his school to have been "selected" as Student's placement before the IEP meeting began. There is no convincing evidence that the District predetermined a placement for Student or was unwilling to consider any suggestions that it Student's mother may have had. No procedural violation occurred.

*Continuum of Program Options*

51.    School districts are required to ensure that a variety of potential educational placements are available to special education students, including placements in general education classes, special day classes, and resource classes at district schools, and placement at certified non-public schools if appropriate. There is no requirement that every possible program option available in a school district be addressed at an IEP meeting.

52.    Student had attended general education classes, albeit at a private school, during her elementary school years. There was no evidence that the District would not be able to meet her needs at one of its elementary schools. The IEP team discussed various potential placements possible within the District at the IEP team meeting held August 21, 2006. Placements considered included a special day class, resource classes, and general education classes, and a combination of all these. The final placement proposed by the District was a combination of general education and resource classes.

53.    At the IEP meeting, Student's mother did not offer any opinion as to why she might have considered a comprehensive elementary school to be an inappropriate placement for Student. She offered no opinion as to why any of the placements discussed by the District members of the IEP team were not appropriate for her daughter. Student's mother did not suggest any alternative placements that she wanted the team to discuss and consider,

and she specifically did not suggest any non-public school that she believed would be an appropriate placement for Student.[16]

54.    The District was not required to discuss the "continuum of program options" at the meeting.  Rather, the District was required to ensure that a continuum of program options was available to meet the needs of all students.

55.    The IEP team considered general education, resource programs, and special education placements for Student.  Ultimately, the District's IEP team proposed a program that combined placement in a general education classroom with resource specialist support, along with specific related services to be provided on the elementary school campus. Student did not establish that the District failed to have available a continuum of program options to meet the needs of children such as Student.

## LEGAL CONCLUSIONS

*Applicable Law*

*Burden of Proof*

1.    The District, as the petitioning party seeking relief, has the burden of proof. (*Schaeffer v. Weast* (2005) 546 U.S. 49 [126 S.Ct. 528, 163 L.Ed.2d 387].)

*The General Principles of the IDEA*

2.    Under both the federal Individuals with Disabilities Education Act (IDEA) and state law, students with disabilities have the right to a free appropriate public education. (FAPE) (20 U.S.C. § 1400; Ed. Code, § 56000.)  The term "free appropriate public education" means special education and related services that are available to the student at no charge to the parent or guardian, that meet the state educational standards, and that conform to the student's individualized education program. (20 U.S.C. § 1401(9).)  A child with a disability has the right to a FAPE under the IDEA and California law. (20 U.S.C. § 1412(a)(1)(A); Ed. Code, § 56000.)   The Individuals with Disabilities Education Improvement Act of 2004 (IDEIA), effective July 1, 2005, amended and reauthorized the IDEA.  The California Education Code was amended, effective October 7, 2005, in response to the IDEIA.

3.    In *Board of Education of the Hendrick Hudson Central School District v. Rowley* (1982) 458 U.S. 176 [102 S.C. 3034] (hereafter *Rowley*), the United States Supreme Court addressed the level of instruction and services that must be provided to a student with disabilities to satisfy the requirement of the IDEA. The Court determined that a student's IEP

---

[16] The Maria Montessori School, where Student presently is enrolled, is not a certified non-public school and, therefore, could not be considered as a placement option by the District.  (Ed. Code, §§ 56034, 56163.)

must be reasonably calculated to provide the student with some educational benefit, but that the IDEA does not require school districts to provide special education students with the best education available or to provide instruction or services that maximize a student's abilities. (*Rowley, Id.* at pp. 198-200.) The Court stated that school districts are required to provide only a "basic floor of opportunity" that consists of access to specialized instructional and related services which are individually designed to provide educational benefit to the student. (*Rowley, Id.* at p. 201.)

4.      California's definition of special education includes both specially designed instruction to meet the unique needs of individuals with exceptional needs and related services to enable them to benefit from such specially designed instruction. (Ed. Code, § 56031). Related services may be referred to as designated instruction and services (DIS). (Ed. Code, § 56363, subd. (a).)

*Requirements of an IEP*

5.      The IEP is a written document for each child who needs special education and related services. The contents of the IEP are mandated by the IDEA. The IEP must include an assortment of information, including a statement of the child's present levels of academic achievement and functional performance. The IEP must also include a statement of measurable annual goals and objectives that are based upon the child's present levels of academic achievement and functional performance and a description of how the child's progress toward meeting the annual goals will be measured. Finally, the IEP must include when periodic reports of the child's progress will be issued to the parent, and a statement of the special education and related services to be provided to the child. (20 U.S.C. § 1414(d)(1)(A); 34 C.F.R. §§ 300.346, 300.347.)[17]

*Procedural Violations*

6       The congressional mandate to provide a FAPE to children includes both a procedural and a substantive component. In *Rowley, supra,* 458 U.S. 176 at p. 205, the United States Supreme Court utilized a two-prong test to determine if a school district had complied with the IDEA. First, the district is required to comply with statutory procedures. Second, a court will examine the child's individual education program (IEP) to determine if it was reasonably calculated to enable the student to receive some educational benefit (See also, *W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23* (9th Cir. 1992) 960 F.2d 1479, 1483.)

7.      The IDEA requires that a due process decision be based upon substantive grounds when determining whether the child received a FAPE. (Ed.Code, § 56505 (f)(1).) A procedural violation therefore only requires a remedy where the procedural violation

---

[17] In October 2006, amendments to the Code of Federal Regulations (C. F.R.) to correlate to the reauthorized IDEA became effective. Unless otherwise specified, the citations herein are to the version of the C.F.R. that was in effect when the IEP that is the subject of this Decision was drafted.

impeded the child's right to a FAPE, significantly impeded the parent's opportunity to participate in the decision making process regarding the provision of a FAPE to the parent's child, or caused a deprivation of educational benefits. (20 U.S.C. § 1415(f)(3)(E); Ed. Code, § 56505, subd. (j); *Rowley, supra,* 458 U.S. at pp. 206-07; see also *Amanda J. v. Clark County School Dist.* (9th Cir. 2001) 267 F.3d 877.) Procedural violations which do not result in a loss of educational opportunity or which do not constitute a serious infringement of parents' opportunity to participate in the IEP formulation process are insufficient to support a finding that a pupil has been denied a free and appropriate public education. (*W.G.* v. *Board of Trustees, supra,* 960 F.2d at p. 1482.)

8.    Procedural errors during the IEP process are subject to a harmless error analysis. In *M.L., et al., v. Federal Way School District* (9th Cir. 2004) 394 F.3d 634, fn. 9, the Ninth Circuit decided that failure to include a regular education teacher at the IEP team meeting was a procedural violation of the IDEA. Utilizing the harmless error analysis, the court determined that the defective IEP team was negatively impacted in its ability to develop a program that was reasonably calculated to enable M.L. to receive educational benefits. (*Ibid.*) In separate opinions, concurring in part and dissenting in part, Judges Gould and Clifton agreed that the procedural error was subject to a harmless error test, and considered whether the error resulted in a loss of educational opportunity to M.L., but disagreed in their conclusions. (*Id.* at pp. 652, 658.)[18]

*Failure to Complete Assessments*

9.    If a child is referred for assessment, the school district is obligated to develop a proposed assessment plan within 15 calendar days of the referral for assessment, unless the parent agrees in writing to an extension. (Ed. Code, § 56043, subd. (a).) A parent shall have at least 15 calendar days from the receipt of the proposed assessment plan to arrive at a decision whether to consent to the assessment plan. (Ed. Code, § 56043, subd. (b).) An IEP required as a result of an assessment of a student must be developed within a total time not to exceed 60 calendar days from the date the school district received the parent's written consent to assessment, not counting school vacations in excess of five schooldays, unless the parent agrees to extend these timeframes in writing. (Ed. Code, § 56043, subd. (f)(1).)

*Participation of a Student's Private School Teacher at the IEP Meeting*

10.    The Ninth Circuit has found that a school district's failure to include a representative from a private school that a child is currently attending violates the procedural mandates of the IDEA. (*W.G.* v. *Board of Trustees, supra,* 960 F.2d at p. 1484.) In *Shapiro v. Paradise Valley Unified School District No. 69* (9th Cir. 2003) 317 F.3d 1072, 1074, the Ninth Circuit held that failure to include the Student's private school teacher at the IEP was a

---

[18] Judge Alarcon, the author of the opinion in *M.L.*, utilized a structural defect analysis in concluding that the failure of a general education teacher to participate in the IEP process denied M.L. a FAPE.

FAPE denial.  The Court made this finding even though the child had been attending a private school in another state.  The *Shapiro* court reasoned that the statute required the teacher of the student be present at the IEP, and even though the child was receiving services in another state, the current teacher of the child was required to attend. (*Id.*)

*Participation of a General Education Teacher at an IEP Meeting*

11.    Education Code section 56341, subdivision (b)(2), provides that the IEP team shall include not less than one regular education teacher of the pupil, "if the pupil is, or may be, participating in the regular education environment."  The regular education teacher shall, "to the extent appropriate," participate in the development, review, and revision of the pupil's IEP, "including assisting in the determination of appropriate positive behavioral interventions and strategies for the pupil and supplementary aids and services and program modifications or supports" pursuant to 20 U.S.C. § 1414(d).  In *M.L., et al., v. Federal Way School District, supra,* 394 F.3d 634, the Court of Appeals for the Ninth Circuit concluded that as long as a general education placement was a possibility, the participation of a general education teacher in the creation of the IEP was required, and the absence constituted a denial of FAPE.  In *Clyde K. v. Puyallup School District No. 3* (9th Cir. 1994) 34 F. 3d 1396, the Ninth Circuit found that either a teacher from a student's current placement, or one from his or her proposed placement, was required to participate in the IEP process.

12.    Current law expressly permits a parent to waive the participation of a regular IEP team member even if that member's area of curriculum or related services is being modified or discussed at the meeting.  However, both of the following must occur:  (1) the parent and the local educational agency consent to the excusal after conferring with the IEP team member and (2) the member submits in writing to the parent and the individualized education program team, input into the development of the individualized education program prior to the IEP meeting.  The parent's consent must be in writing.  (20 U.S.C. § 1414 (d)(1)(C); Ed. Code, § 56341, subds. (g) & (h).)

*Parental Participation in the IEP Process/ Predetermination of Placements*

13.    In determining the educational placement of a disabled student, the public agency must ensure that the placement is based on the child's IEP. (34 C.F.R. § 300.552.) Predetermination of a student's placement is a procedural violation that deprives a student of a FAPE in those instances where placement is determined without parental involvement at the IEP. Merely pre-writing proposed goals and objectives does not constitute predetermination. The test is whether the school district comes to the IEP meeting with an open mind and several options, and discusses and considers the parents' placement recommendations and/or concerns before the IEP team makes a final recommendation. (*Doyle v. Arlington County School Board* (E.D. Va. 1992) 806 F.Supp.1253, 1262; *Deal v. Hamilton County Board of Education*, (6th Cir. 2005) 392 F.3d 840.)

14.    A parent is a required and vital member of the IEP team. (20 U.S.C. § 1414 (d)(1)(B)(i); 35 C.F.R. § 300.344(a)(1); Ed Code, § 56341, subd. (b)(1).) The IEP team must consider the concerns of the parent for enhancing his or her child's education throughout the child's education.  (20 U.S.C. §§ 1414(c)(1)(B) [during evaluations], (d)(3)(A)(i) [during development of IEP], (d)(4)(A)(ii)(III) [during revision of IEP]; 34 C.F.R. §§ 300.343(C)(2)(III) [during IEP meetings], 3001533(a)(1)(i) [during evaluations]; Ed. Code, §§ 56341.1 subd. (a)(1) [during development of IEP], subd. (d)(3) [during revision of IEP], and subd. (e) [right to participate in an IEP].)

15.    In order to fulfill the goal of parental participation in the IEP process, the school district is required to conduct, not just an IEP meeting, but also a meaningful IEP meeting. (*W.G. v. Board of Trustees, supra*, 960 F.2d at p. 1485.)  A parent has meaningfully participated in the development of an IEP when she is informed of her child's problems, attends the IEP meeting, expresses her disagreement regarding the IEP team's conclusions, and requests revisions in the IEP. (*N.L. v. Knox County Schools* (6th Cir. 2003) 315 F.3d 688, 693; *Fuhrmann v. East Hanover Bd. of Educ.* (3d Cir. 1993) 993 F.2d 1031, 1036 [parent who has an opportunity to discuss a proposed IEP and whose concerns are considered by the IEP team has participated in the IEP process in a meaningful way].)

16.    Parents' procedural right to participate in the IEP process includes the school district's obligation to make a formal written offer that clearly identifies the proposed program. (*Union Sch. Dist. V. Smith* (9th Cir. 1994) 15 F.3d 1519, 1526.) In *Union*, the Ninth Circuit noted that one of the reasons for requiring a formal written offer is to provide parents with the opportunity to decide whether the offer of placement is appropriate and whether to accept the offer. (*Ibid.*)

*Continuum of Program Options*

17.    Local educational agencies must ensure that a continuum of program options is available to meet the needs of individuals with exceptional needs for special education and related services. (Ed. Code, § 56360.) There is no requirement that every possible program available in a school district be addressed at an IEP meeting.

*Determination of Issues*

*Did the District's offer of placement and services contained in Student's IEP dated August 21, 2006, constitute a free and appropriate public education (FAPE) for Student, in the least restrictive environment, for the 2006-2007 school year?*

No, it did not.  Because of the following procedural violations, Student's access to a FAPE was impeded, she was deprived of some educational benefits, and her mother was denied the opportunity to participate in the IEP process.

1.   · The District's failure to complete assessments. The inability to complete all necessary assessments in order to determine Student's unique needs, and thus be able to determine appropriate goals and an appropriate placement, was the result of a convergence of several factors, such as the timing of the settlement agreement between the parties, their decision to assess over the summer months in spite of applicable tolling periods, the parties' decision to hold an IEP meeting before the start of the next school year, and the unavailability of teachers (and assessors) due to summer vacation. Student's mother delayed more than a month in signing the proposed assessment plan. However, even if she had signed it within 15 days of receipt, as required by law, the statutory timeframe to complete the assessments would have encompassed most of the summer of 2006. The District likely would have been faced with same scenario: school instruction would have ended at Student's private school and at the District's traditionally scheduled schools. The District would have been in the same position after Student's mother signed the assessment plan on June 27, 2006: scrambling to find appropriate assessors and unable to assess Student at her private school. Although the District acknowledged in the IEP itself that assessments were not complete and had to be continued, it chose not to try to postpone the original IEP meeting or to set a second IEP meeting after the fall school semester had begun and the assessors could complete their assessments.

Based upon factual findings 10, 11, 18 through 25, and 30 though 32, and Applicable Law 5 through 9, the District's failure to complete assessments in the area of autistic-like behaviors, social skills, sensory modulation, hearing screening and health screening, was not a harmless error.. Due to the District's failure to complete the assessments, it was unable to determine all of Student's unique needs and to propose goals and objectives to address those needs. As a result, the District was unable to offer a placement that would provide some educational benefit. The failure to complete the assessments deprived Student of educational benefits and/or opportunities, and impeded her right to a FAPE, resulting in a substantive violation of the IDEA.

2.   The District's failure to include Student's private school teacher and a general education teacher in the IEP process. The District failed to invite to the IEP process either Student's private school teacher or a general education teacher from one of its elementary schools. The District did not ask Student's mother to waive the presence of either teacher and Student's mother did not volunteer to do so.

Although Sunnyside Elementary School, which was the ultimate placement offered by the District to Student, was not in session on the day the IEP meeting was held, Rogers Elementary was is session on that date and, in fact, the District was able to secure the participation of various educators from that school. There was no reason given for the absence of a general education teacher. The District's assertion that it met its obligation under the IDEA by having educators present who possessed general education credentials begs the question. The purpose of the IDEA's requirement that a general education teacher be present is specifically to ensure that questions concerning the placements being offered will be able to be answered by an appropriate person who can respond to queries concerning how a program will be implemented in his or her classroom. Where, as in this case, a

general education class is contemplated, it is vital that a general education teacher be involved in the IEP process. The District neither explained the absence of a general education teacher, attempted to have one participate by telephone, nor attempted to re-schedule the IEP meeting so that one could be invited.

Nor was the fact that the Montessori School was on summer break justify the District's failure to at least attempt to have Student's private school teacher participate in the IEP process. Student had never attended elementary school in the District. Other than the few hours spent with her during assessments, no District educator was personally familiar with Student. The District's ability to determine Student's present levels of performance would significantly would have been enhanced by the participation of her most recent teacher.

Based upon Factual Findings 10, 11, and 33 through 42, and Applicable Law 6, 7, 8, 10, 11, and 12, the failure to attempt to secure the participation of Student's private school teacher and a general education teacher in the IEP process was not harmless error. The failure to involve these teachers in the IEP process significantly impeded the opportunity of Student's mother to participate in the IEP process, denied educational benefits or opportunity to Student, and impeded Student's right to a FAPE. This resulted in a substantive denial of FAPE to Student.

3.    Because the District has failed to meet the procedural requirements of the IDEA, it is unnecessary for the ALJ to address whether the District's proposed IEP substantively met the requirements for a FAPE.


## ORDER

The District's request that the IEP dated August 21, 2006, be deemed an offer of FAPE to Student is denied.


## PREVAILING PARTY

Education Code section 56507, subdivision (d), requires that the hearing decision indicate the extent to which each party has prevailed on each issue heard and decided. Student prevailed on the only issue presented for decision.

RIGHT TO APPEAL THIS DECISION

The parties to this case have the right to appeal this Decision to a court of competent jurisdiction.  If an appeal is made, it must be made within ninety (90) days of receipt of this decision.  (Ed. Code, § 56505, subd. (k).)

DATED:  March 21, 2007

DARRELL L. LEPKOWSKY
Administrative Law Judge
Office of Administrative Hearings
Special Education Division

## PROOF OF SERVICE

I, **Rosie Ruiz**, declare as follows: I am over 18 years of age and have no interest in the action within; my place of employment and business address is:

**Office of Administrative Hearings**
**Special Education Division**
**2349 Gateway Oaks, Suite 200**
**Sacramento, CA 95833-4231**

On **March 21, 2007**, I served a copy of the following entitled action:

### DECISION - OAH CASE NO. - 2006100142

to each of the person(s) named below, at the address set out next to each name, by the following method:

Paul & Jill Mares
4845 Casa Bonita Ct.
Bonita, CA 91902

Ellen Dowd, Esq.
Special Education Law Center
2658 Del Mar Heights Road, Suite 228
Del Mar, CA 92014

Sundee M. Johnson, Esq.
Atkinson, Andelson, Loya, Ruud & Romo
17871 Park Plaza Drive, Suite 200
Cerritos, CA 90703-3333

☒ **US MAIL** – by enclosing the action in a sealed envelope and placing the envelope for collection and mailing on that date and at the Office of Administrative Hearings, City of Sacramento, County of Sacramento, State of California, following ordinary business practices. I am readily familiar with the Office of Administrative Hearings' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

XX  Regular Mail

☒ **FACSIMILE TRANSMISSION** – by personally transmitting to the above-named person(s), who has previously agreed to receive documents via facsimile transmission, to the facsimile number(s) shown above, on the date and time listed below, from facsimile machine number (916) 263-0554, pursuant to California Rules of Court, rules 2003-2008, Government Code section 11440.20, and California Code Regulations, title I, section 1008, subdivision (d). A true copy of the above-described documents(s) was transmitted by facsimile transmission and the transmission was reported as complete and without error. A copy of the transmission report, properly issued by the transmitting machine, is attached to this proof of service.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct, and this Declaration was executed at **Sacramento, California** at

**2:36 PM** on the **21** of **March**, 2007.  Rosie Ruiz

# Mediation and Due Process Hearing Request Form

Important information you need to know before requesting a Mediation and Due Process Hearing:

- The law requires that the Special Education Hearing Office encourage mediation at all stages of the hearing process as a preferred method of resolving the dispute. Therefore, a mediation conference will automatically be scheduled whenever there is a hearing request.
- Attorneys or advocates may represent parties during the mediation or hearing.

If you wish to file a request for a Mediation and Due Process Hearing, complete and print a copy of this Due Process Hearing Request Form (NOTE: The required information must be provided for request to be processed.) and mail or fax to:

Office of Administrative Hearings, Special Education Unit
2349 Gateway Oaks Drive, Suite 200
Sacramento, California 95833-4231
Phone: (916) 263-0880 - Fax: (916) 263-0890

As soon as the completed request has been processed you will be notified by mail.

---

**STUDENT INFORMATION:**

| | |
|---|---|
| NAME, First and Last (Required) | Courtney Mares |
| ADDRESS (Required) | 4845 Casa Bonita Court |
| | Bonita, California 91902 |
| DATE OF BIRTH | 12/19/97 |
| GRADE LEVEL | 3rd |
| SCHOOL OF ATTENDANCE (Required) | Non-Public School |
| DISTRICT OF RESIDENCE (Required) | Chula Vista Elementary School District |

# Mediation and Due Process Hearing Request Form

**PARENT INFORMATION:**

| | |
|---|---|
| NAME, First and Last (Required) | Paul and Jill Mares |
| ADDRESS (Required) | 4845 Casa Bonita Court |
| | Bonita, California 91902 |
| HOME PHONE | ( 619) 470-3221 |
| CELL PHONE | ( 619 ) 857-3385 |
| FAX | ( 866) 747-1826 |

**PARTIES TO BE NAMED:**

| | |
|---|---|
| DISTRICT OF RESIDENCE (Required) ADDITIONAL PARTIES (Required) | Chula Vista Elementary School District |

(Any other school district, including school of attendance, or public agency that is responsible for providing services that should be a party in the mediation and hearing.)

**REQUESTING PARTY** (Circle) (Required)

PARENT                    **(PARENT REPRESENTATIVE)**
SCHOOL DISTRICT           SCHOOL DISTRICT REPRESENTATIVE
OTHER AGENCY

If the requesting party is not the parent, please complete the following:

| | |
|---|---|
| NAME | Ellen Dowd, Esq. |
| ADDRESS | 2658 Del Mar Heights Road #228 |
| | Del Mar, California 92014 |
| ORGANIZATION | Special Education Legal Center |
| PHONE | ( 858) 342-8360 |
| FAX | ( 858) 755-6348 |

## Mediation and Due Process Hearing Request Form

**BRIEF SUMMARY OF REASON FOR REQUEST** (Describe the nature of the problem including all relating facts.)

1. Failure to offer and provide a FAPE for the 2006-2007 by procedural violations of IDEA which have been judicially determined to be a denial of FAPE in the Decision dated March 21, 2007 ("the Decision"), OAH Case No. N2006100142, entitled "Chula Vista Elementary School District v. Courtney Mares."

   The Decision, of which Petitioner requests judicial notice be taken in the instant Due Process Complaint, determined the following issue:

   "Did the District's offer of placement and services contained in Student's IEP dated August 21, 2006, constitute a free appropriate public education (FAPE) for Student, in the least restrictive environment, for the 2006-2007 school year?"

   The Determination was "No," based upon the following procedural violations:[1]

   - The District's failure to complete assessments.

   - The District's failure to include Student's private school teacher and a general education teacher in the IEP process.

   Student prevailed on the only issue presented in the Decision.

## PROPOSED RESOLUTION OF PROBLEMS STATED ABOVE:

1. The District should be ordered to provide compensatory education for the 2006-2007 school year, while Courtney has not been receiving a FAPE, by reimbursement for all expenses paid by Courtney's parents for educational services for the 2006-2007 school year, and the District should be ordered to provide continued placement at a non-public school where Courtney can receive a FAPE, with transportation reimbursement and DIS Services.

   The known educational expenses to date are $19,814.21, as detailed below:

---

[1] This Due Process Complaint will recite the specific violations in the Decision without the detail, which can be read in the Decision.

## Mediation and Due Process Hearing Request Form

**2006-2007 COMPENSATORY EDUCATION
REIMBURSEMENTS FOR COURTNEY MARES**

| | | |
|---|---|---|
| 2006-2007 Montessori Tuition | $ | 7,300.00 |
| Montessori Fee for Supplies/Materials | $ | 200.00 |
| Transportation to/from school   82 miles x 180 days x .485 | $ | 7,158.60 |
| | | |
| 2006-2007 Occupational Therapy | paid by insurance | |
| Transportation to OT     42 miles per appt x  48  x .485 | $ | 977.76 |
| | | |
| 2006-2007 Speech Therapy | paid by insurance | |
| Transportation to Speech     42 miles per appt x 17 x .485 | $ | 346.29 |
| | | |
| 2006-2007 Kumon Math Instruction | $ | 1,380.00 |
| Transportation 3 miles x 90 x .485 | $ | 130.95 |
| | | |
| Autism Counseling    50 sessions x $30 copay | $ | 1,500.00 |
| Transportation 30 miles x 50 appt x .485 | $ | 727.50 |
| | | |
| Vision Therapy Evaluation--Dr Hiller | $ | 87.00 |
| Transportation  12.6 miles x  .485 | | 6.11 |
| | | |
| **TOTAL REIMBURSEMENTS** | $ | **19,814.21** |

EXHIBIT 3

## SETTLEMENT AGREEMENT
**Courtney Mares v. Chula Vista Elementary School District;**
### Office of Administrative Hearings
### Case No. N2007040433

May 31, 2007

This Settlement Agreement ("Agreement") is made and entered into by and between the Student's parent, Jill Mares ("Parent"), and the Chula Vista Elementary School District ("District"), collectively the "Parties." This Agreement is made for the following purposes and with reference to the facts contained herein.

1. The purpose of this Agreement is to compromise and settle fully and finally all differences, disputes, and controversies existing between the Parent and the District in the above-mentioned case up to, and including the date of the execution of this Agreement, and in consideration of the premises and promises contained herein, the Parent and the District agree as set forth herein.

2. This Agreement shall not in any way be construed as an admission by any party that it has acted wrongfully with respect to the other parties or any other related person or entity, or that any party has any rights whatsoever against any other party. All parties specifically disclaim any liability to or wrongful acts against each other or any related person or entity of the other, on the part of itself/themselves, its/their employees and/or its/their officers.

3. The District agrees to reimburse the Parent an amount not to exceed $19,814.21 for educational services provided to Courtney including, but not limited to Montessori school tuition for the 2006-2007 school year, and for mileage reimbursement for Courtney to receive the educational services. Said payment will be made within 45 business days of presentation directly to the district's Special Education Department of proof of payment of educational services provided to Courtney at Parent expense and documentation of mileage for Courtney to receive the educational services. The check shall be made payable to the LAW OFFICES OF ELLEN DOWD ATTORNEY CLIENT TRUST ACCOUNT.

4. This Agreement resolves any and all issues between the Parties regarding OAH Case No. N2007040433, up to, and including the date of execution of this Agreement.

5. This Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of any of the parties, or any other person, firm or other entity.

6. The Parties agree that this Settlement Agreement shall remain strictly confidential. Notwithstanding the foregoing, the Parties are free to disclose the terms of this Agreement to their attorney(s) and may disclose the terms of this Agreement for purposes of implementation and enforcement of the Agreement.

7. This Agreement contains the sole and entire agreement and understanding of the parties with respect to the entire subject matter hereof. No representations, oral or otherwise, express or implied, other than those contained herein have been made by any party hereto. No other agreements not specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the parties hereto.

8. This Agreement may be executed in one or more counterparts, which appended together, shall constitute a fully executed Agreement, and be binding and enforceable as if all parties had executed the same copy thereof. A facsimile version of any party's signature shall be deemed an original signature.

9. Should any provision of this Agreement be declared or determined by any court of competent jurisdiction to be illegal, invalid, or unenforceable, the legality, validity, and enforceability of the remaining parts, terms or provisions shall not be affected thereby and said illegal, unenforceable or invalid part, term, or provision shall be deemed not to be part of this Agreement.

10. This Agreement is entered into pursuant to the laws of the State of California and the United States of America and shall be interpreted pursuant to those laws.

The undersigned Parties declare that they have read this document consisting of three (3) typewritten pages and understand its terms and freely enter into final Agreement.

REVIEWED & ACCEPTED:

_Jill M. Mares_   6-3-07          _____          _____
Jill Mares, Parent        Date    Patricia Kurl,                 Date
                                  Executive Director,
                                  Special Education

                        REVIEWED AS TO FORM:

_Ellen Dowd_ 1/3/07               _____   6-4-07
Ellen Dowd,           Date        Justin Shinnefield,        Date
Attorney for the Petitioner       Attorney for the Respondent

07/20/07  FRI 09:42 FAX 858 485 9412    ATKINSON ANDELSON SD    Case 3:12-cv-02374-SP    Document 1    Filed 11/08/2007    Page 39 of 80    022

JUN 04 '07 17:59 FR AALRR - CERRITOS #2    562 653 3333 TO 18587556349    P.05/05

The undersigned Parties declare that they have read this document consisting of three (3) typewritten pages and understand its terms and freely enter into final Agreement.

REVIEWED & ACCEPTED:

_____     _____     *Patricia Ludi* 6/4/07
Jill Mares, Parent          Date        _____  Date
                                        Patricia Ludi,
                                        Executive Director,
                                        Special Education

REVIEWED AS TO FORM:

_____     _____     _____  _____
Ellen Dowd,                 Date        Justin Shinnefield,        Date
Attorney for the Petitioner             Attorney for the Respondent

Exhibit A - Page 17

** TOTAL PAGE.05 **

CIV-010

| | |
|---|---|
| ATTORNEY (Name, state bar number, and address):<br>Ellen Dowd    SBN 141206<br>2658 Del Mar Heights Road #228<br>Del Mar, California 92014<br><br>TELEPHONE NO.: 858-342-8360    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name):    Applicant, Jill Mares | FOR COURT USE ONLY<br>F I L E D<br>SOUTH COUNTY<br>2007 JUN 29  PM 2: 27<br>CLERK OF THE COURT<br>SAN DIEGO COUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 500 Third Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Chula Vista, CA 91910
BRANCH NAME: South County Division

PLAINTIFF/PETITIONER: Courtney Mares

DEFENDANT/RESPONDENT: Chula Vista Elementary School District

| APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM-CIVIL<br>☐ EX PARTE | CASE NUMBER:<br>37-2007-00063792-CU-PT-SC |
|---|---|

*NOTE: This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use Form FL-200. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use Form DE-350, GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.*

1. Applicant (name): Jill Mares                                    is
   a. ☑ the parent of (name):  Courtney Mares
   b. ☐ the guardian of (name):
   c. ☐ the conservator of (name):
   d. ☐ a party to the suit.
   e. ☐ the minor to be represented (if the minor is 14 years of age or older).
   f. ☐ another interested person (specify capacity):

2. This application seeks the appointment of the following person as guardian ad litem (state name, address, and telephone number):
   Jill Mares
   4845 Casa Bonita Court, Bonita, California 91902  619-470-3321

3. The guardian ad litem is to represent the interests of the following person (state name, address, and telephone number):
   Courtney Mares
   4845 Casa Bonita Court, Bonita, California 91902  619-470-3321

4. The person to be represented is:
   a. ☑ a minor (date of birth): 12/19/97
   b. ☐ an incompetent person.
   c. ☐ a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. ☑ the person named in item 3 has a cause or causes of action on which suit should be brought (describe):
   The minor is a named party to an administrative due process proceeding concerning  educational rights of the minor, which culminated in a settlement agreement. A copy of the Due Process Complaint is attached as Exhibit "A."   A copy of the Settlement Agreement is attached as Exhibit "B."

   ☐ Continued on Attachment 5a.

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-010 [Rev. January 1, 2007]

**APPLICATION AND ORDER FOR APPOINTMENT
OF GUARDIAN AD LITEM-CIVIL**

Code of Civil Procedure,<br>§ 372 et seq.

American LegalNet, Inc.<br>www.FormsWorkflow.com

CIV-010

| PLAINTIFF/PETITIONER: Courtney Mares | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Chula Vista Elementary School District | |

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

c. ☐ the person named in item 3 has no guardian or conservator of his or her estate.

d. ☑ the appointment of a guardian ad litem is necessary for the following reasons (specify):

For enforcement of the Settlement Agreement through a determination of its fairness in an accompanying Petition to Approve Minor's Compromise.

☐ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
   a. ☑ related (state relationship): Mother
   b. ☐ not related (specify capacity):

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. (If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):

☐ Continued on Attachment 7.

Ellen Dowd
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: 6/26/07

Jill Mares
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF APPLICANT)

## CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.
Date: 6/26/07

Jill Mares
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

## ORDER ☐ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that (name): Jill Mares
is hereby appointed as the guardian ad litem for (name): Courtney Mares
for the reasons set forth in item 5 of the application.
Date: 6/29/07

WILLIAM S. CANNON
_____
JUDICIAL OFFICER
☐ SIGNATURE FOLLOWS LAST ATTACHMENT

CIV-010 [Rev. January 1, 2007]          **APPLICATION AND ORDER FOR APPOINTMENT**          Page 2 of 2
                                        **OF GUARDIAN AD LITEM-CIVIL**

**MC-350**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Ellen Dowd SBN 141206
2658 Del Mar Heights Road #228
Del Mar, California 92014

TELEPHONE NO.: 858-342-8360    FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* Petitioner, Jill Mares

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Diego
STREET ADDRESS: 500 Third Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Chula Vista, California 91910
BRANCH NAME: South County Division

CASE NAME:
Courtney Mares v. Chula Vista Elementary School District

CASE NUMBER:
37-2007-00063792-CU-PT-SC

PETITION TO APPROVE:
[✓] **COMPROMISE OF DISPUTED CLAIM**
[✓] **COMPROMISE OF PENDING ACTION**
[ ] **DISPOSITION OF PROCEEDS OF JUDGMENT**
    [✓] **Minor**  [ ] **Adult Person With A Disability**

HEARING DATE:
7/23/07
DEPT.: 4    TIME: 8:30 AM

NOTE: This form is to be used for the compromise of a disputed claim of a minor, the compromise of a pending action or proceeding in which a minor or an adult person with a disability (including a conservatee) is a party, or disposition of the proceeds of a judgment for a minor or adult person with a disability under Code of Civil Procedure section 372 et seq. or Probate Code section 3500 et seq. The person compromising the claim or the action and the minor or adult person with a disability must attend the hearing on this petition unless the court for good cause dispenses with the personal appearance. The court may require the presence and testimony of witnesses, including the attending or examining physician, and other evidence relating to the merits of the claim and the nature and extent of the injury, care, treatment, and hospitalization.

1. **Petitioner** *(name):* Jill Mares
2. **Claimant** *(name):* Courtney Mares
   a. Address:

   b. Date of birth: 12/19/97    c. Age: 9    d. Sex: F    e. [✓] Minor [ ] Adult person with a disability

3. **Relationship**
   a. Petitioner's relationship to the claimant *(check all applicable boxes):*
     (1) [✓] Parent    (7) [✓] Other relationship *(specify:)* Pending guardian ad litem
     (2) [ ] Guardian ad litem
     (3) [ ] Guardian
     (4) [ ] Conservator
     (5) [ ] Disabled adult claimant is a petitioner. *(See instructions for items 3a(5) and (6) below.)*
     (6) [ ] Disabled adult claimant's express consent to the relief requested in this petition is provided on Attachment 3a(6).
       *(If you checked item (5) or (6), state facts on Attachment 3a(5) or (6) showing that the claimant has capacity under Probate Code section 812 to petition or consent to a petition. Only an adult claimant who has sufficient capacity and who does not have a conservator of the estate may petition or consent to a petition. See Probate Code section 3613.)*

   b. (1) Petitioner [✓] is not [ ] is  a plaintiff in a suit arising out of the same incident or accident from which the claim arises. *(if you answered "is," explain in Attachment 3b the circumstances and whether the petitioner's own claim or its disposition has in any way affected the proposed compromise of the claim that is the subject of this petition.)*
     (2) [ ] The claim that is the subject of this petition has been reduced to a judgment for the claimant.

   c. Petitioner [✓] is not [ ] is  a claimant against the recovery of the claimant.
     *(If you answered "is," explain in Attachment 3c the circumstances and whether the petitioner's own claim or its disposition has in any way affected the proposed compromise of the claim or the proposed disposition of the proceeds of the judgment that is the subject of this petition.)*

Page 1 of 8

Form Adopted for Mandatory Use
Judicial Council of California
MC-350 [Rev. January 1, 2007]

**PETITION TO APPROVE COMPROMISE OF DISPUTED CLAIM OR PENDING ACTION OR DISPOSITION OF PROCEEDS OF JUDGMENT FOR MINOR OR ADULT PERSON WITH A DISABILITY**
**(Miscellaneous)**

Code of Civil Procedure, § 372 et seq.;
Probate Code, § 3500 et seq.;
Cal. Rules of Court, rules 3.1384,
7.950, 7.951
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

MC-350

| CASE NAME: | CASE NUMBER: |
|---|---|
| Courtney Mares v. Chula Vista Elementary School District | |

4. **Nature of claim**

The claim of the minor or adult person with a disability

a. ☐ has not been filed in an action or proceeding. *(Complete items 5–23.)*

b. ☑ is the subject of a pending action or proceeding that will be compromised without a trial on the merits of the claim.

Name of court:  Office of Administrative Hearings, Special Education Division

Case No.: N2007040433    Trial date:    *(Complete items 5–23.)*

c. ☐ has been or will be reduced to a judgment for the claimant after a trial on the merits of the claim.

Judgment filed on *(date)*:    Amount: $

*(Attach a copy of the (proposed) judgment as Attachment 4c and complete items 7–8, 10–11, 14–20, and 22–23.)*

5. ☑ **Incident or accident**

The incident or accident occurred as follows:

a. Date and time:  8/21/06; 2006-2007 school year

b. Place:  Chula Vista

c. Persons involved *(names)*:  Courtney Mares (student); Patricia Ludi (district representative)

☐ Continued on Attachment 5.

6. ☑ **Nature of incident or accident**

The facts, events, and circumstances of the incident or accident are *(describe)*:

At an Individualized Education Plan meeting on 8/21/06, the respondent failed to offer and provide a free appropriate public education (FAPE) to minor student for he 2006-2007 school year in violation of Individuals With Disabilities Education Act, 20 U.S.C. Section 1400, et seq.  Her parent were required to pay for her education outside the school district, for which reimbursement was sought.

☐ Continued on Attachment 6.

7. **Injuries**

The following injuries were sustained by the claimant as a result of the incident or accident *(describe)*:

Denial of FAPE resulting in private educational expenses in the amount of $19,814.21.

☐ Continued on Attachment 7.

8. **Treatment**

The claimant received the following care and treatment for the injuries sustained as a result of the incident or accident *(describe)*:

N/A

☐ Continued on Attachment 8.

MC-350

| CASE NAME: | CASE NUMBER: |
|---|---|
| — Courtney Mares v. Chula Vista Elementary School District | |

9. ☐ **Extent of injuries and recovery**
 *(An original or a photocopy of all doctors' reports containing a diagnosis of and prognosis for the claimant's injuries, and a report of the claimant's present condition, must be attached to this petition as Attachment 9.)*

 a. ☐ The claimant has recovered completely from the effects of the injuries described in item 7, and there are no permanent injuries.

 b. ☐ The claimant has not recovered completely from the effects of the injuries described in item 7, and the following injuries from which the claimant has not recovered are temporary *(describe the remaining injuries)*:

 ☐ Continued on Attachment 9b.

 c. ☐ The claimant has not recovered completely from the effects of the injuries described in item 7, and the following injuries from which the claimant has not recovered are permanent *(describe the permanent injuries)*:

 ☐ Continued on Attachment 9c.

10. **Medical expenses**
 a. **Totals**
  (1) **Total charges:**  $
  (2) **Total amount paid (whether or not by insurance):**  $
  (3) **Total of negotiated reductions, if any:**  $ _____
  (4) **Total net amount owed:**  $
  (5) **Total amount of medical liens, if any:**  $
  (6) **Total amount of medical expenses to be paid from proceeds of settlement or judgment:**  $ _____
  *(Explain any differences between items 10a (4),(5), and (6) in Attachment 10.)*

 b. The names of the hospitals, doctors, and other health-care providers that have furnished care and treatment for claimant, the respective charges for such care and treatment, the amounts paid, the amounts of negotiated reductions of the charges, if any, the net amounts owed to each provider, and the amount of the provider's lien, if any, are described below:

  (1) (a) Provider *(name)*:  All educational expenses are detailed on the Due process Complaint, p. 4, Ex. A.
    (b) Address:

    (c) Care or treatment *(describe)*:
    (d) Amount charged:  $
    (e) Amount paid (whether or not by insurance):  $
    (f) Negotiated reduction, if any:  $ _____
    (g) Net amount owed:  $
    (h) Amount of lien, if any:  $
    (i) Amount to be paid from proceeds of settlement or judgment:  $ _____

  (2) (a) Provider *(name)*:
    (b) Address:

    (c) Care or treatment *(describe)*:
    (d) Amount charged:  $
    (e) Amount paid (whether or not by insurance):  $
    (f) Negotiated reduction, if any:  $ _____
    (g) Net amount owed:  $
    (h) Amount of lien, if any:  $
    (i) Amount to be paid from proceeds of settlement or judgment:  $ _____

 ☐ Continued on Attachment 10.  *(Provide information about additional providers in the above format.)*

MC-350

| CASE NAME: | CASE NUMBER: |
|---|---|
| — Courtney Mares v. Chula Vista Elementary School District | |

11. **Information about attorney representing or assisting petitioner**

    a. (1) ☐ Petitioner has not been represented or assisted by an attorney in preparing this petition or in any other way with respect to the claim asserted *(if this item is checked, go to item 12)*.

       (2) ☑ Petitioner has been represented or assisted by an attorney in preparing this petition or with respect to the claim asserted *(if this item is checked, answer questions 11b–11g below)*.

    b. The attorney who has represented or assisted petitioner is *(name)*:  Ellen Dowd

       (1) State Bar number:  141206

       (2) Law firm:  Special Education Legal Center

       (3) Address:  2658 Del Mar Heights Road #228
                Del Mar, California 92014

       (4) Telephone number:

    c. The attorney ☑ did not ☐ did  become concerned with this matter, directly or indirectly, at the instance of a party against whom the claim is asserted or a party's insurance carrier. *(If you answered "did," explain the circumstances in Attachment 11c.)*

    d. The attorney ☑ is not ☐ is  representing or employed by any other party or any insurance carrier involved in the matter. *(If you answered "is," identify the party or carrier and explain the relationship in Attachment 11d.)*

    e. The attorney ☑ has not ☐ has  received attorney's fees or other compensation in addition to that requested in this petition for services provided in connection with the claim giving rise to this petition *(if you answered "has," identify the person who paid the fees or other compensation, the amounts paid, and the dates of payment)*:

| From whom *(names)* | Amounts | Dates |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |

       ☐ Continued on Attachment 11e.

    f. The attorney ☐ does not ☑ does  expect to receive attorney fees or other compensation in addition to that requested in this petition for services provided in connection with the claim giving rise to this petition *(if you answered "does," identify the person who will pay the fees or other compensation, the amounts to be paid, and the expected dates of payment)*:

| From whom *(names)* | Amounts | Expected dates |
|---|---|---|
| Chula Vista Elementary School Dist. | $ $7,409.00 | October, 2007 |
| | $ | |
| | $ | |

       ☐ Continued on Attachment 11f.

    g. Petitioner and the attorney ☐ do not ☑ do  have an agreement for services provided in connection with the claim giving rise to this petition. *(If you answered "do," describe the terms of the agreement including the amount of any contingency fee)*:

      The fee agreement calls for deferred payment. Fees are accrued and payable, however, payment is deferred in the event that Petitioner is the prevailing party in a Due Process Complaint, either by decision after hearing or by settlement and approval of minor's compromise, in which case Petitioner can be awarded reasonable attorney fees against Respondent pursuant to 20 U.S.C. 1415(i)(3)(B)(i).

       ☐ Continued on Attachment 11g.

**PETITION TO APPROVE COMPROMISE OF DISPUTED CLAIM OR PENDING ACTION OR DISPOSITION OF PROCEEDS OF JUDGMENT FOR MINOR OR ADULT PERSON WITH A DISABILITY**
**(Miscellaneous)**

MC-350

| CASE NAME: Courtney Mares v. Chula Vista Elementary School District | CASE NUMBER: |
|---|---|

12. [✓]  **Amount and terms of settlement**

a. [✓]  By way of settlement, the following defendants have offered to pay the following sums to the claimant:

| Defendants *(names)* | Amounts |
|---|---|
| Chule Vista Elementary School District | $ |
| | $ |
| | $ |
| Total: | $ 19,814.21 |

[  ] Continued on Attachment 12.

b. The terms of settlement are as follows *(if the settlement is to be paid in installments, both the total amount and the present value of the settlement must be included):*

Payment in full of settlement amount to minor ($19,814.21)made payable to Ellen Dowd, Attorney At Law, Attorney -Client Trust Account, Special Education Legal Center, 2658 Del Mar Heights Road #228, Del Mar, CA 92014

[  ] Continued on Attachment 12.

13. [✓]  **Damage payments to others**

a. [✓]  By way of settlement, no defendant has offered to pay to any other person or persons money damages arising out of the same incident or accident that resulted in injury to the claimant.

b. [  ]  By way of settlement, one or more defendants have offered to pay to another person or persons money damages arising out of the same incident or accident.

(1)  The total amount offered by all defendants to others *(specify):* $ 0

(2)  The damage payments are to be apportioned and distributed as follows:

| Other plaintiffs or claimants *(names)* | Amounts |
|---|---|
| N/A | $ |
| | $ |
| | $ |

[  ] Continued on Attachment 13b.

14.  **Attorney fees and expenses (other than medical expenses) to be paid from proceeds of settlement or judgment**

a.  Total amount of attorney fees for which court approval is requested:  $ [0]

*(If attorney fees are requested, a declaration from the attorney explaining the basis for the requested fees must be attached as Attachment 14a.)*

b.  The following additional items of expense (other than medical expenses) have been incurred or paid, are reasonable, resulted from the incident or accident, and should be paid out of claimant's share of the proceeds of the settlement or judgment:

| Items | Payees *(names)* | Amounts |
|---|---|---|
| N/A | | $ 0 |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

[  ] Continued on Attachment 14b.    Total: $ [0]

**PETITION TO APPROVE COMPROMISE OF DISPUTED CLAIM OR PENDING ACTION OR DISPOSITION OF PROCEEDS OF JUDGMENT FOR MINOR OR ADULT PERSON WITH A DISABILITY**
**(Miscellaneous)**

**MC-350**

| CASE NAME: | CASE NUMBER: |
|---|---|
| Courtney Mares v. Chula Vista Elementary School District | |

**15. Total balance**
The balance of the proceeds of the proposed settlement or judgment remaining for the claimant after payment of all requested fees and expenses is:    $ | 19,814.21 |

**16. Disposition of balance of proceeds of settlement or judgment**
Petitioner requests that the balance of the proceeds of the settlement or judgment be disbursed as follows:

a. [✓] There is a guardianship of the estate of the minor or a conservatorship of the estate of the adult person with a disability filed in *(name of court):* Petition for Guardian Ad Litem Pending
Case No.: Same Case No. as above

    (1) [✓] $ 19,814.21      of the proceeds in money or other property will be paid or delivered to the guardian of the estate of the minor or the conservator of the estate of the conservatee. The money or other property is specified in Attachment 16a(1).

    (2) [ ] Petitioner is the guardian or conservator of the estate of the minor or the adult person with a disability. Petitioner requests authority to deposit or invest $      of the money or other property to be paid or delivered under 16a(1) with one or more financial institutions in this state or with a trust company, subject to withdrawal only as authorized by the court. The money or other property and the name, branch, and address of each financial institution or trust company are specified in Attachment 16a(2).

    (3) [ ] Petitioner proposes that all or a portion of the proceeds **not** become part of the guardianship or conservatorship estate. Petitioner requests authority to deposit or transfer these proceeds as follows *(check all that apply):*

        (a) [ ] $      will be deposited in insured accounts in one or more financial institutions in this state from which no withdrawals can be made without a court order. The name, branch, and address of each depository are specified in Attachment 16a(3).

        (b) [ ] $      will be invested in a single-premium deferred annuity subject to withdrawal only on order of the court. The terms and conditions of the annuity are specified in Attachment 16a(3).

        (c) [ ] $      will be transferred to a custodian for the benefit of the minor under the California Uniform Transfers to Minors Act. The name and address of the proposed custodian and the property to be transferred are specified in Attachment 16a(3).

        (d) [ ] $      will be transferred to the trustee of a trust that is either created by or approved in the order approving the settlement or the judgment given or to be given for the minor. This trust is revocable when the minor attains the age of 18 years and contains all other terms and conditions determined to be necessary by the court to protect the minor's interests. The terms of the proposed trust and the property to be transferred are specified in Attachment 16a(3).
             [ ] A copy of the (proposed) judgment is attached as Attachment 4c.

        (e) [ ] $      will be transferred to the trustee of a special needs trust under Probate Code sections 3602(d) and 3604 for the benefit of the minor or the adult person with a disability. The terms of the proposed special needs trust and the property to be transferred are specified in Attachment 16a(3).

b. [ ] There is no guardianship of the estate of the minor or conservatorship of the estate of the adult person with a disability. Petitioner requests that the balance of the proceeds of the settlement or judgment be disbursed as follows *(check all that apply):*

    (1) [ ] A guardian of the estate of the minor or a conservator of the estate of the adult person with a disability will be appointed. $      of money and other property will be paid or delivered to the person so appointed. The money or other property are specified in Attachment 16b(1).

    (2) [ ] $      of money will be deposited in insured accounts in one or more financial institutions in this state, subject to withdrawal only upon the authorization of the court. The name, branch, and address of each depository are specified in Attachment 16b(2).

    (3) [ ] $      of money will be invested in a single-premium deferred annuity, subject to withdrawal only upon the authorization of the court. The terms and conditions of the annuity are specified in Attachment 16b(3).

MC-350

| CASE NAME: | CASE NUMBER: |
|---|---|
| — Courtney Mares v. Chula Vista Elementary School District | |

**16. b.   Disposition of proceeds of settlement or judgment**

(4) ☐ $ N/A    will be paid or transferred to the trustee of a special needs trust under Probate Code sections 3604 and 3611(c) for the benefit of the minor or the adult person with a disability. The terms of the proposed special needs trust and the money or other property to be paid or transferred are specified in Attachment 16b(4).

(5) ☐ $    will be paid or delivered to a parent of the minor, upon the terms and under the conditions specified in Probate Code sections 3401–3403, without bond. The name and address of the parent and the money or other property to be delivered are specified in Attachment 16b(5).   *(Value of minor's entire estate, including the money or property to be delivered, must not exceed $5,000.)*

(6) ☐ $    will be transferred to a custodian for the benefit of the minor under the California Uniform Transfers to Minors Act. The name and address of the proposed custodian and the money or other property to be transferred are specified in Attachment 16b(6).

(7) ☐ $    will be transferred to the trustee of a trust that is either created by or approved of in the order approving the settlement or the judgment given or to be given for the minor. This trust is revocable when the minor attains the age of 18 years and contains all other terms and conditions determined to be necessary by the court to protect the minor's interests. The terms of the proposed trust and the money or other property to be transferred are specified in Attachment 16b(7).
  ☐ A copy of the (proposed) judgment is attached as Attachment 4c.

(8) ☐ $    of money will be held on such conditions as the court in its discretion determines is in the best interest of the minor or the adult person with a disability. The proposed conditions are specified on Attachment 16b(8).   *(Value must not exceed $20,000.)*

(9) ☐ $    of property other than money will be held on such conditions as the court in its discretion determines is in the best interest of the minor or the adult person with a disability. The proposed conditions and the property are specified in Attachment 16b(9).

(10) ☐ $    will be deposited with the county treasurer of the County of *(name):* The deposit is authorized under and subject to the conditions specified in Probate Code section 3611(h).

(11) ☐ $    will be paid or transferred to the adult person with a disability. The money or other property is specified in Attachment 16b(11).

☐ Continued on Attachment 16.

**17.   Medi-Cal notice**
Notice of the claim or action ☐ has   ☑ has not   been given under Welfare and Institutions Code section 14124.73. *(If notice has not been given, explain):*

N/A

☐ Continued on Attachment 17.

**18.  ☐  Statutory liens for special needs trust**
Petitioner requests a court order for payment of funds to a special needs trust *(explain how statutory liens under Probate Code section 3604, if any, will be satisfied):*

☐ Continued on Attachment 18.

**MC-350**

| CASE NAME: | CASE NUMBER: |
|---|---|
| Courtney Mares v. Chula Vista Elementary School District | |

19. **Summary**

   a. Gross amount of proceeds of settlement or judgment for claimant:         $ 19,814.21

   b. Medical expenses to be paid from proceeds of settlement
       or judgment:                                         $

   c. Attorney fees to be paid from proceeds of settlement or
       judgment:                                         $

   d. Expenses (other than medical) to be paid from proceeds
       of settlement or judgment:                        $ _____

   e. Total of fees and expenses to be paid from proceeds of settlement or judgment
       (add (b), (c), and (d)):                                      $ (_____)

   f. Balance of proceeds of settlement or judgment available for claimant after payment of all
       fees and expenses (subtract (e) from (a)):             $ | 19,814.21 |

20. ☐ **Additional orders**
    Petitioner requests the following additional orders (specify and explain):

    ☐ Continued on Attachment 20.

21. ☐ Petitioner has made a careful and diligent inquiry and investigation to ascertain the facts relating to the incident or accident in which the claimant was injured; the responsibility for the incident or accident; and the nature, extent, and seriousness of the claimant's injuries. Petitioner fully understands that if the compromise proposed in this petition is approved by the court and is consummated, the claimant will be forever barred from seeking any further recovery of compensation even though the claimant's injuries may in the future appear to be more serious than they are now thought to be.

22. Petitioner recommends the compromise settlement or the proposed disposition of the proceeds of the judgment for the claimant to the court as being fair, reasonable, and in the best interest of the claimant and requests that the court approve this compromise settlement or proposed disposition and make such other and further orders as may be just and reasonable.

23. Number of pages attached: ___

Date: June 27, 2007

_Ellen Dowd_

    Ellen Dowd
    (TYPE OR PRINT NAME OF ATTORNEY)             (SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: June 26, 2007

_Jill M. Mares_

    Jill Mares
    (TYPE OR PRINT NAME OF PETITIONER)        (SIGNATURE OF PETITIONER)

**PETITION TO APPROVE COMPROMISE OF DISPUTED CLAIM OR PENDING
ACTION OR DISPOSITION OF PROCEEDS OF JUDGMENT FOR MINOR OR
ADULT PERSON WITH A DISABILITY**
**(Miscellaneous)**

# Mediation and Due Process Hearing Request Form

Important information you need to know before requesting a Mediation and Due Process Hearing:

- The law requires that the Special Education Hearing Office encourage mediation at all stages of the hearing process as a preferred method of resolving the dispute. Therefore, a mediation conference will automatically be scheduled whenever there is a hearing request.
- Attorneys or advocates may represent parties during the mediation or hearing.

If you wish to file a request for a Mediation and Due Process Hearing, complete and print a copy of this Due Process Hearing Request Form (NOTE: The required information must be provided for request to be processed.) and mail or fax to:

Office of Administrative Hearings, Special Education Unit
2349 Gateway Oaks Drive, Suite 200
Sacramento, California 95833-4231
Phone: (916) 263-0880 - Fax: (916) 263-0890

As soon as the completed request has been processed you will be notified by mail.

---

**STUDENT INFORMATION:**

| | |
|---|---|
| NAME, First and Last (Required) | Courtney Mares |
| ADDRESS (Required) | 4845 Casa Bonita Court |
| | Bonita, California 91902 |
| DATE OF BIRTH | 12/19/97 |
| GRADE LEVEL | 3rd |
| SCHOOL OF ATTENDANCE (Required) | Non-Public School |
| DISTRICT OF RESIDENCE (Required) | Chula Vista Elementary School District |

EXHIBIT A

# Mediation and Due Process Hearing Request Form

## PARENT INFORMATION:

| | |
|---|---|
| NAME, First and Last (Required) | Paul and Jill Mares |
| ADDRESS (Required) | 4845 Casa Bonita Court |
| | Bonita, California 91902 |
| HOME PHONE | ( 619) 470-3221 |
| CELL PHONE | ( 619 ) 857-3385 |
| FAX | ( 866) 747-1826 |

## PARTIES TO BE NAMED:

| | |
|---|---|
| DISTRICT OF RESIDENCE (Required) | Chula Vista Elementary School District |
| ADDITIONAL PARTIES (Required) | |

(Any other school district, including school of attendance, or public agency that is responsible for providing services that should be a party in the mediation and hearing.)

## REQUESTING PARTY (Circle) (Required)

PARENT                        **(PARENT REPRESENTATIVE)**
SCHOOL DISTRICT               SCHOOL DISTRICT REPRESENTATIVE
OTHER AGENCY

If the requesting party is not the parent, please complete the following:

| | |
|---|---|
| NAME | Ellen Dowd, Esq. |
| ADDRESS | 2658 Del Mar Heights Road #228 |
| | Del Mar, California 92014 |
| ORGANIZATION | Special Education Legal Center |
| PHONE | ( 858) 342-8360 |
| FAX | ( 858) 755-6348 |

# Mediation and Due Process Hearing Request Form

**BRIEF SUMMARY OF REASON FOR REQUEST** (Describe the nature of the problem including all relating facts.)

1. Failure to offer and provide a FAPE for the 2006-2007 by procedural violations of IDEA which have been judicially determined to be a denial of FAPE in the Decision dated March 21, 2007 ("the Decision"), OAH Case No. N2006100142, entitled "Chula Vista Elementary School District v. Courtney Mares."

   The Decision, of which Petitioner requests judicial notice be taken in the instant Due Process Complaint, determined the following issue:

   "Did the District's offer of placement and services contained in Student's IEP dated August 21, 2006, constitute a free appropriate public education (FAPE) for Student, in the least restrictive environment, for the 2006-2007 school year?"

   The Determination was "No," based upon the following procedural violations:[1]

   - The District's failure to complete assessments.

   - The District's failure to include Student's private school teacher and a general education teacher in the IEP process.

   Student prevailed on the only issue presented in the Decision.

**PROPOSED RESOLUTION OF PROBLEMS STATED ABOVE:**

1. The District should be ordered to provide compensatory education for the 2006-2007 school year, while Courtney has not been receiving a FAPE, by reimbursement for all expenses paid by Courtney's parents for educational services for the 2006-2007 school year, and the District should be ordered to provide continued placement at a non-public school where Courtney can receive a FAPE, with transportation reimbursement and DIS Services.

   The known educational expenses to date are $19,814.21, as detailed below:

---

[1] This Due Process Complaint will recite the specific violations in the Decision without the detail, which can be read in the Decision.

# Mediation and Due Process Hearing Request Form

**2006-2007 COMPENSATORY EDUCATION
REIMBURSEMENTS FOR COURTNEY MARES**

| | | |
|---|---|---:|
| 2006-2007 Montessori Tuition | $ | 7,300.00 |
| Montessori Fee for Supplies/Materials | $ | 200.00 |
| Transportation to/from school   82 miles x 180 days x .485 | $ | 7,158.60 |
| | | |
| 2006-2007 Occupational Therapy | paid by insurance | |
| Transportation to OT     42 miles per appt x  48  x .485 | $ | 977.76 |
| | | |
| 2006-2007 Speech Therapy | paid by insurance | |
| Transportation to Speech     42 miles per appt x 17 x .485 | $ | 346.29 |
| | | |
| 2006-2007 Kumon Math Instruction | $ | 1,380.00 |
| Transportation 3 miles x 90 x .485 | $ | 130.95 |
| | | |
| Autism Counseling    50 sessions x $30 copay | $ | 1,500.00 |
| Transportation 30 miles x 50 appt x .485 | $ | 727.50 |
| | | |
| Vision Therapy Evaluation--Dr Hiller | $ | 87.00 |
| Transportation  12.6 miles x  .485 | | 6.11 |
| | | |
| **TOTAL REIMBURSEMENTS** | $ | **19,814.21** |

**ELLEN DOWD, Esq.**
**Special Education Legal Center**
**2658 Del Mar Heights Road #228**
**Del Mar, California  92014**
**(858) 342-8360          Fax: (858) 755-6348**

# Fax



| To: | OAH | | |
|---|---|---|---|
| Fax: | 916-263-0890 | | Pages (5)  (Including Fax Cover) |
| Re: | Courtney Mares v. Chula Vista Elementary School District | Date: | 4/16/07 |

CC: Patricia Ludi               619-585-0976
    Justin Shinnefield, Esq.    562-653-3333

## --NOTICE--

The information contained in this facsimile message is ATTORNEY CLIENT PRIVILEGED and CONFIDENTIAL INFORMATION, intended only for the use of or individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that ant dissemination, distribution or copying of this message is strictly prohibited.  If you have received this facsimile in error, please notify sender by telephone at 858-342-8360, and return the written communication to the above address by mail.

## SETTLEMENT AGREEMENT
### Courtney Mares v. Chula Vista Elementary School District;
### Office of Administrative Hearings
### Case No. N2007040433

May 31, 2007

This Settlement Agreement ("Agreement") is made and entered into by and between the Student's parent, Jill Mares ("Parent"), and the Chula Vista Elementary School District ("District"), collectively the "Parties." This Agreement is made for the following purposes and with reference to the facts contained herein.

1. The purpose of this Agreement is to compromise and settle fully and finally all differences, disputes, and controversies existing between the Parent and the District in the above-mentioned case up to, and including the date of the execution of this Agreement, and in consideration of the premises and promises contained herein, the Parent and the District agree as set forth herein.

2. This Agreement shall not in any way be construed as an admission by any party that it has acted wrongfully with respect to the other parties or any other related person or entity, or that any party has any rights whatsoever against any other party. All parties specifically disclaim any liability to or wrongful acts against each other or any related person or entity of the other, on the part of itself/themselves, its/their employees and/or its/their officers.

3. The District agrees to reimburse the Parent an amount not to exceed $19,814.21 for educational services provided to Courtney including, but not limited to Montessori school tuition for the 2006-2007 school year, and for mileage reimbursement for Courtney to receive the educational services. Said payment will be made within 45 business days of presentation directly to the district's Special Education Department of proof of payment of educational services provided to Courtney at Parent expense and documentation of mileage for Courtney to receive the educational services. The check shall be made payable to the LAW OFFICES OF ELLEN DOWD ATTORNEY CLIENT TRUST ACCOUNT.

4. This Agreement resolves any and all issues between the Parties regarding OAH Case No. N2007040433, up to, and including the date of execution of this Agreement.

## EXHIBIT B

5.  This Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of any of the parties, or any other person, firm or other entity.

6.  The Parties agree that this Settlement Agreement shall remain strictly confidential.  Notwithstanding the foregoing, the Parties are free to disclose the terms of this Agreement to their attorney(s) and may disclose the terms of this Agreement for purposes of implementation and enforcement of the Agreement.

7.  This Agreement contains the sole and entire agreement and understanding of the parties with respect to the entire subject matter hereof.  No representations, oral or otherwise, express or implied, other than those contained herein have been made by any party hereto.  No other agreements not specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the parties hereto.

8.  This Agreement may be executed in one or more counterparts, which appended together, shall constitute a fully executed Agreement, and be binding and enforceable as if all parties had executed the same copy thereof.  A facsimile version of any party's signature shall be deemed an original signature.

9.  Should any provision of this Agreement be declared or determined by any court of competent jurisdiction to be illegal, invalid, or unenforceable, the legality, validity, and enforceability of the remaining parts, terms or provisions shall not be affected thereby and said illegal, unenforceable or invalid part, term, or provision shall be deemed not to be part of this Agreement.

10.  This Agreement is entered into pursuant to the laws of the State of California and the United States of America and shall be interpreted pursuant to those laws.

The undersigned Parties declare that they have read this document consisting of three (3) typewritten pages and understand its terms and freely enter into final Agreement.

REVIEWED & ACCEPTED:

_Jill M. Mares_   6-3-07     _____   _____
Jill Mares, Parent    Date      Patricia Ludi,      Date
                                                  Executive Director,
                                                  Special Education

REVIEWED AS TO FORM:

_Ellen Dowd_ 6/3/07            _____   6-4-07
Ellen Dowd,        (Date)       Justin Shinnefield,     Date
Attorney for the Petitioner          Attorney for the Respondent

The undersigned Parties declare that they have read this document consisting of three (3) typewritten pages and understand its terms and freely enter into final Agreement.

REVIEWED & ACCEPTED:

*Patricia Ludi*  6/4/07

Jill Mares, Parent          Date          Patricia Ludi,          Date
Executive Director,
Special Education

REVIEWED AS TO FORM:

Ellen Dowd,              Date          Justin Shinnefield,          Date
Attorney for the Petitioner          Attorney for the Respondent

CIV-010

| | |
|---|---|
| ATTORNEY (Name, state bar number, and address):<br>Ellen Dowd    SBN 141206<br>2658 Del Mar Heights Road #228<br>Del Mar, California 92014 | FOR COURT USE ONLY<br><br>JUN 22 PM 2: 27 |
| TELEPHONE NO.: 858-342-8360    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name):    Applicant, Jill Mares | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Diego
STREET ADDRESS: 500 Third Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Chula Vista, CA 91910
BRANCH NAME: South County Division

PLAINTIFF/PETITIONER:  Courtney Mares

DEFENDANT/RESPONDENT:  Chula Vista Elementary School District

| APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM-CIVIL<br>☐ EX PARTE | CASE NUMBER:<br>37-2007-00063792-CU-PT-SC |
|---|---|

**NOTE: This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use Form FJ-200. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use Form DE-350, GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.**

1. Applicant (name): Jill Mares                                        is
   a. ☑ the parent of (name):  Courtney Mares
   b. ☐ the guardian of (name):
   c. ☐ the conservator of (name):
   d. ☐ a party to the suit.
   e. ☐ the minor to be represented (if the minor is 14 years of age or older).
   f. ☐ another interested person (specify capacity):

2. This application seeks the appointment of the following person as guardian ad litem (state name, address, and telephone number):
   Jill Mares
   4845 Casa Bonita Court, Bonita, California 91902  619-470-3321

3. The guardian ad litem is to represent the interests of the following person (state name, address, and telephone number):
   Courtney Mares
   4845 Casa Bonita Court, Bonita, California 91902  619-470-3321

4. The person to be represented is:
   a. ☑ a minor (date of birth):  12/19/97
   b. ☐ an incompetent person.
   c. ☐ a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. ☑ the person named in item 3 has a cause or causes of action on which suit should be brought (describe):
      The minor is a named party to an administrative due process proceeding concerning educational rights of the minor, which culminated in a settlement agreement. A copy of the Due Process Complaint is attached as Exhibit "A."   A copy of the Settlement Agreement is attached as Exhibit "B."

   ☐ Continued on Attachment 5a.

Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-010 [Rev. January 1, 2007]

**APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM-CIVIL**

Code of Civil Procedure,
§ 372 et seq.

American LegalNet, Inc.
www.FormsWorkflow.com

CIV-010

| PLAINTIFF/PETITIONER: Courtney Mares | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Chula Vista Elementary School District | |

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

c. ☐ the person named in item 3 has no guardian or conservator of his or her estate.

d. ☑ the appointment of a guardian ad litem is necessary for the following reasons (specify):

For enforcement of the Settlement Agreement through a determination of its fairness in an accompanying Petition to Approve Minor's Compromise.

☐ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
   a. ☑ related (state relationship): Mother
   b. ☐ not related (specify capacity):

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. (If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):

☐ Continued on Attachment 7.

Ellen Dowd
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 6/26/07

Jill Mares
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF APPLICANT)

## CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.

Date: 6/26/07

Jill Mares
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

## ORDER     ☐ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that (name): Jill Mares
is hereby appointed as the guardian ad litem for (name): Courtney Mares
for the reasons set forth in item 5 of the application.

Date: 6/29/07

WILLIAM S. CANNON
_____
JUDICIAL OFFICER

☐ SIGNATURE FOLLOWS LAST ATTACHMENT

CIV-010 [Rev. January 1, 2007]

**APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM-CIVIL**

Page 2 of 2

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Ellen Dowd, Esq.  SBN 141206<br>2658 Del Mar Heights Road #228<br>Del Mar, California 92014 | FILED<br>[COURT COUNTY]<br>2007 JUN 27  PM 2: 27 |
| TELEPHONE NO.: 858-342-8360          FAX NO.: | |
| ATTORNEY FOR *(Name):* Petitioner, Jill Mares | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 500 Third Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Chula Vista, California 91910
BRANCH NAME: South County Division

CASE NAME:
Courtney Mares v. Chula Vista Elementary School District

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 37-2007-00063792-CU-PT-SC | |
| | | | JUDGE: | |
| | | | DEPT: | |

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Insurance coverage (18) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Other contract (37) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | **Real Property** | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Eminent domain/Inverse | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) |    condemnation (14) | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | [ ] Wrongful eviction (33) |    above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Other real property (26) |    types (41) |
| [ ] Business tort/unfair business practice (07) | **Unlawful Detainer** | **Enforcement of Judgment** |
| [ ] Civil rights (08) | [ ] Commercial (31) | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Residential (32) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Drugs (38) | [ ] RICO (27) |
| [ ] Intellectual property (19) | **Judicial Review** | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | [ ] Asset forfeiture (05) | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Petition re: arbitration award (11) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Writ of mandate (02) | [✓] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Other judicial review (39) | |
| [ ] Other employment (15) | | |

2. This case [ ] is  [✓] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Type of remedies sought *(check all that apply):*
   a. [ ] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive

4. Number of causes of action *(specify):* One

5. This case [ ] is  [✓] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 27, 2007

Ellen Dowd
_____
(TYPE OR PRINT NAME)          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2007] | **CIVIL CASE COVER SHEET** | *American LegalNet, Inc.*<br>*www.FormsWorkflow.com* | Cal. Rules of Court, rules 3.220, 3.400–3.403;<br>Standards of Judicial Administration, § 19<br>*www.courtinfo.ca.gov* |

EXHIBIT 5

MC-351

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Ellen Dowd SBN 141206
2658 Del Mar Heights Road #228
Del Mar, California 92014

TELEPHONE NO.: 858-342-8360    FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* Petitioner, Jill Mares

**FOR COURT USE ONLY**

F I L E D
Clerk of the Superior Court

AUG 2 3 2007
RECEIVED
By: G. FIGUEROA, Deputy
JUN 2 9 2007

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 500 Third Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Chula Vista, California 91902
BRANCH NAME: South County Division

CASE NAME:
Courtney Mares v. Chula Vista Elementary School District

ORDER APPROVING:
[✓] COMPROMISE OF DISPUTED CLAIM
[ ] COMPROMISE OF PENDING ACTION
[ ] DISPOSITION OF PROCEEDS OF JUDGMENT
   [ ] Minor   [ ] Adult Person With A Disability

CASE NUMBER: 37·2007-00063792-CU-PT-SC

HEARING DATE: 8-23-07   8:30 AM   DEPT.: 4

1. **Petitioner** *(name):* Jill Mares
   has petitioned for court approval of a proposed compromise of a disputed claim of a minor or a pending action involving a minor or an adult person with a disability, or a proposed disposition of the proceeds of a judgment for a minor or an adult person with a disability.

2. **Hearing**
   Date:   Time:   Dept.:   Judicial officer:

3. **Relationship to claimant**
   Petitioner is claimant's *(check all applicable boxes):*
   a. [✓] Parent
   b. [ ] Guardian ad litem
   c. [ ] Guardian
   d. [ ] Conservator
   e. [✓] Other *(specify):* Pending guardian ad litem

4. **Claimant** *(name):* Courtney Mares
   a. [✓] is a minor.
   b. [ ] is an adult "person with a disability" within the meaning of Probate Code section 3603.

5. **Defendant**
   The claim or action to be compromised is asserted, or the judgment is entered, against *(name of settling or judgment defendant or defendants (the "payer")):*
   Chula Vista Elementary School District

6. **THE COURT FINDS** that all notices required by law have been given.

7. **THE COURT ORDERS**
   a. The petition is granted and the proposed compromise of claim or action or the proposed disposition of the proceeds of the judgment is approved. The gross amount or value of the settlement or judgment in favor of claimant is $ [19,814.21]
   b. The payer shall disburse the proceeds of the settlement or judgment approved by this order in the following manner:
     (1) **Payment of fees and expenses**
       Fees and expenses shall be paid by one or more checks or drafts, drawn payable to the order of the petitioner and the petitioner's attorney, if any, or directly to third parties entitled to receive payment identified in this order for the following items of expense or damage, which are hereby authorized to be paid out of the proceeds of the settlement or judgment:
       (a) [✓] Attorney fees in the total amount of: $ [0]   payable to *(specify):*

Page 1 of 3

Form Adopted for Mandatory Use
Judicial Council of California
MC-351 [Rev. January 1, 2007]

**ORDER APPROVING COMPROMISE OF DISPUTED CLAIM OR PENDING ACTION OR DISPOSITION OF PROCEEDS OF JUDGMENT FOR MINOR OR ADULT PERSON WITH A DISABILITY**
(Miscellaneous)

Code of Civil Procedure, § 372;
Probate Code, § 3500 et seq.;
Cal. Rules of Court, rules 3.1384, 7.953
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

MC–351

| CASE NAME: | CASE NUMBER: |
|---|---|
| Courtney Mares v. Chula Vista Elementary School District | |

7. b. (1) (b) ☑ Reimbursement for medical and all other expenses paid by the petitioner or the petitioner's attorney in the total amount of:  $ 0

(c) ☑ Medical, hospital, ambulance, nursing, and other like expenses payable directly to providers as follows, in the total amount of:  $ 0

(i) Payee *(name):*
   (A) Address:

   (B) Amount: $
(ii) Payee *(name):*
   (A) Address:

   (B) Amount: $

☐ Continued on Attachment 7b(1)(c). *(Provide information about additional payees in the above format.)*

(d) ☑ Other authorized disbursements payable directly to third parties in the total amount of: $ 0
*(Describe and state the amount of each item, and provide the name and address of each payee):*

☐ Continued on Attachment 7b(1)(d).

(e) ☑ Total allowance for fees and expenses from the settlement or judgment:  $ 0 ·

(2) **Balance**
The balance of the settlement or judgment available for claimant after payment of all allowed fees and expenses is:  $ 19,814.21
The balance shall be disbursed as follows:

(a) ☐ By one or more checks or drafts in the total amount of *(specify):*  $
drawn payable to the order of the petitioner as trustee for the claimant. Each such check or draft must bear an endorsement on the face or reverse that it is for deposit in one or more interest-bearing, federally insured accounts in the name of the petitioner as trustee for the claimant, and no withdrawals may be made from the accounts except as provided in the *Order to Deposit Money Into Blocked Account,* which is signed contemporaneously with this order ("blocked account").

(b) ☑ By the following method(s) *(describe each method, including the amount to be disbursed ):*

By payment of the entire amount to LAW OFFICES OF ELLEN DOWD ATTORNEY CLIENT TRUST ACCOUNT

☐ Continued on Attachment 7b(2)(b).

(c) ☐ If money is to be paid to a special needs trust under Probate Code section 3604, all statutory liens in favor of the state Department of Health Services, the state Department of Mental Health, the state Department of Developmental Services, and any city and county in California must first be satisfied by the following method *(specify):*

☐ Continued on Attachment 7b(2)(c).

**ORDER APPROVING COMPROMISE OF DISPUTED CLAIM OR PENDING ACTION OR DISPOSITION OF PROCEEDS OF JUDGMENT FOR MINOR OR ADULT PERSON WITH A DISABILITY (Miscellaneous)**

**MC–351**

| CASE NAME: | CASE NUMBER: |
|---|---|
| Courtney Mares v. Chula Vista Elementary School District | 37- 2007-000 63792 - |

*Cu - PT - SC*

8. ☐ **Further orders of the court concerning blocked accounts**
The court makes the following additional orders concerning any part of the balance ordered to be deposited in a blocked account under item 7b(2)(a):

a. Within 48 hours of receipt of a check or draft described in item 7b(2)(a), the petitioner and the petitioner's attorney, if any, must deposit the check or draft in the petitioner's name as trustee for the claimant in one or more blocked accounts at *(specify name, branch, and address of each depository, and the amount of each account):*

☐ Continued on Attachment 8a.

b. The petitioner and the petitioner's attorney, if any, must deliver to each depository at the time of deposit three copies of the *Order to Deposit Money Into Blocked Account*, which is signed contemporaneously with this order, and three copies of the *Receipt and Acknowledgment of Order to Deposit Money Into Blocked Account* ("receipt"). The petitioner or the petitioner's attorney must file a copy of the receipt with this court within 15 days of the deposit. The sole responsibilities of the petitioner and the petitioner's attorney, if any, are to place the balance in a blocked account or accounts and to timely file a copy of the receipt.

c. The balance of the proceeds of settlement or judgment deposited in a blocked account or accounts under item 7b(2)(a) may be withdrawn only as follows *(check (1) or (2)):*

(1) ☐ No withdrawals of principal or interest may be made from the blocked account or accounts without a further written order under this case name and number, signed by a judge, and bearing the seal of this court. The money on deposit is not subject to escheat.

(2) ☐ The blocked account or accounts belong to a minor. The minor was born on *(date):*
No withdrawals of principal or interest may be made from the blocked account or accounts without a further written order under this case name and number, signed by a judicial officer, and bearing the seal of this court, until the minor attains the age of 18 years. When the minor attains the age of 18 years, the depository, without further order of this court, is authorized and directed to pay by check or draft directly to the former minor, upon proper demand, all moneys including interest deposited under this order. The money on deposit is not subject to escheat.

9. ☑ **Authorization to execute settlement documents**
The petitioner is authorized to execute settlement documents as follows *(check only one):*

a. ☐ Upon receipt of the full amount of the settlement sum approved by this order and the deposit of funds, the petitioner is authorized and directed to execute and deliver to the payer a full, complete, and final release and discharge of any and all claims and demands of the claimant by reason of the accident or incident described in the petition and the resultant injuries to the claimant and a properly executed dismissal with prejudice.

b. ☑ The petitioner is authorized and directed to execute any and all documents reasonably necessary to carry out the terms of the settlement.

c. ☐ The petitioner is authorized and directed *(specify):*

☐ Continued on Attachment 9c.

10. Bond is ☐ ordered and fixed in the amount of: $            ☑ not required.

11. A copy of this order shall be served on the payer forthwith.

12. ☐ **Additional orders**
The court makes the following additional orders *(specify):*

☐ Continued on Attachment 12.

Date:

**AUG 2 3 2007**

**WILLIAM S. CANNON**

_____
JUDICIAL OFFICER
☐ SIGNATURE FOLLOWS LAST ATTACHMENT

**ORDER APPROVING COMPROMISE OF DISPUTED CLAIM OR PENDING ACTION OR DISPOSITION OF PROCEEDS OF JUDGMENT FOR MINOR OR ADULT PERSON WITH A DISABILITY**
**(Miscellaneous)**

**EXHIBIT 6**

SETTLEMENT AGREEMENT
Courtney Mares v. Chula Vista Elementary School District;
Office of Administrative Hearings
Case No. N2005120876

May 11, 2006

This Settlement Agreement ("Agreement") is made and entered into by and between the Student's parent, Jill Mares ("Parent"), and the Chula Vista Elementary School District ("District"), collectively the "Parties." This Agreement is made for the following purposes and with reference to the facts contained herein.

1. The purpose of this Agreement is to compromise and settle fully and finally all differences, disputes, and controversies existing between the Parent and the District up to, and including the date of the execution of this Agreement, and in consideration of the premises and promises contained herein, the Parent and the District agree as set forth herein.

2. This Agreement shall not in any way be construed as an admission by any party that it has acted wrongfully with respect to the other parties or any other related person or entity, or that any party has any rights whatsoever against any other party. All parties specifically disclaim any liability to or wrongful acts against each other or any related person or entity of the other, on the part of itself/themselves, its/their employees and/or its/their officers.

3. The District will complete and provide the Parent with a comprehensive assessment plan ("AP") for Courtney within 15 days of the execution of this Agreement. The Parent agrees to allow the District to reasonably assess Courtney and agrees to make Courtney reasonably available for the evaluations, including at Courtney's current private school placement. Parents further agree to provide updated health information in a Nurse's Health Form.

4. The District agrees that within three business days of Parent's execution of the AP, the District will dismiss with prejudice OAH Case # N2005110385, entitled Chula Vista Elementary School District v. Courtney Mares. *done*

5. Based upon the AP in paragraph 3, the District shall convene an IEP team meeting to review assessment results and develop a District program for Courtney's 2006-2007 school year. The Parent agrees to waive any and all claims related to *prior to the commencement of the 2006-2007 school year*

(JMM) *ŜO*

Courtney's right to a free, appropriate public education ("FAPE") up to and through the day before the IEP Meeting at which the District's offer of FAPE is made. The Parent also agrees to waive Courtney's current private school as her 'stay put' placement.

6. The District shall pay an amount not to exceed $39,250.00 for educational services provided to Courtney and for attorney's fees and costs incurred in the above-mentioned matter. Said payment will be made within 45 business days of presentation directly to the district's Special Education Department of detailed proof of payment of educational services provided to Courtney at Parent expense (e.g., cancelled checks and/or credit card statements) and itemized billing invoices for attorney's fees incurred in the above-mentioned case. The check shall be made payable to the LAW OFFICES OF ELLEN DOWD ATTORNEY/CLIENT TRUST ACCOUNT.

7. This Agreement resolves any and all issues between the Parties, up to, and including the date of execution of this Agreement.

8. This Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of any of the parties, or any other person, firm or other entity.

9. The Parties agree that this Settlement Agreement shall remain strictly confidential. Notwithstanding the foregoing, the Parties are free to disclose the terms of this Agreement to their attorney(s) and may disclose the terms of this Agreement for purposes of implementation and enforcement of the Agreement.

10. This Agreement contains the sole and entire agreement and understanding of the parties with respect to the entire subject matter hereof. No representations, oral or otherwise, express or implied, other than those contained herein have been made by any party hereto. No other agreements not specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the parties hereto.

11. This Agreement may be executed in one or more counterparts, which appended together, shall constitute a fully executed Agreement, and be binding and enforceable as if all parties had executed the same copy thereof. A facsimile version of any party's signature shall be deemed an original signature.

12. Should any provision of this Agreement be declared or determined by any court of competent jurisdiction to be illegal,

invalid, or unenforceable, the legality, validity, and enforceability of the remaining parts, terms or provisions shall not be affected thereby and said illegal, unenforceable or invalid part, term, or provision shall be deemed not to be part of this Agreement.

13. This Agreement is entered into pursuant to the laws of the State of California and the United States of America and shall be interpreted pursuant to those laws.

The undersigned Parties declare that they have read this document consisting of three (3) typewritten pages and understand its terms and freely enter into final Agreement.

REVIEWED & ACCEPTED:

_Joel M. Mares_   5/12/06
Joel Mares, Parent   Date

_____   _____
Patricia Dhul,   Date
Executive Director,
Special Education

REVIEWED AS TO FORM:

_Ellen Dowd_   5/11/06
Ellen Dowd,   Date
Attorney for the Petitioner

_____   5-12-06
Justin Brinkerhoff,   Date
Attorney for the Respondent

invalid, or unenforceable, the legality, validity, and enforceability of the remaining parts, terms or provisions shall not be affected thereby and said illegal, unenforceable or invalid part, term, or provision shall be deemed not to be part of this Agreement.

13. This Agreement is entered into pursuant to the laws of the State of California and the United States of America and shall be interpreted pursuant to those laws.

The undersigned Parties declare that they have read this document consisting of three (3) typewritten pages and understand its terms and freely enter into final Agreement.

REVIEWED & ACCEPTED:

_____
Jill Mares, Parent    Date

Patricia Ludi    3/11/06
_____
Patricia Ludi,    Date
Executive Director,
Special Education

REVIEWED AS TO FORM:

_____
Ellen Dowd,    Date
Attorney for the Petitioner

_____
Justin Shinnefield,    Date
Attorney for the Respondent

## SETTLEMENT AND MUTUAL RELEASE AGREEMENT

This Settlement and Mutual Release Agreement ("Agreement") is made by and between JILL MARES ("Ms. Mares") and CHULA VISTA ELEMENTARY SCHOOL DISTRICT ("District"), sometimes collectively referred to as the Parties.

## RECITALS

A.    On or about May 11, 2006, the District and Ms. Mares entered into a settlement agreement regarding educational services provided to student Courtney Mares, a copy of which is incorporated herein by reference ("the Settlement Agreement").

B.    Pursuant to the Settlement Agreement, the District agreed to pay Ms. Mares an amount not to exceed $39,250.00 within 45 business days of Ms. Mares' presentation to the District of detailed proof of payment of educational services provided to Courtney Mares at Ms. Mares' expense. Pursuant to Paragraph 7 of the Settlement Agreement, the Parties agreed to resolve any and all issues between the District and Ms. Mares up to, and including, the date of execution of the Settlement Agreement.

C.    During performance of the Settlement Agreement, a dispute arose between the Parties concerning the sufficiency of the proof of payment of educational services which Ms. Mares presented to the District.

D.    Ms. Mares filed a Complaint for Declaratory Relief entitled, <u>Jill Mares v. Chula Vista Elementary School District</u>, Superior Court of the State of California for the County of San Diego, Case Number GIS26351 ("The Lawsuit"). In The Lawsuit, Ms. Mares sought a declaration modifying the language of, and enforcing, the Settlement Agreement which resolved any and all issues between the District and Ms. Mares up to, and including, the date of execution of the Settlement Agreement.

E.    The Parties expressly deny all allegations advanced, liability asserted, and fault assigned by the Parties in The Lawsuit.

F.    This Agreement is entered into in good faith to avoid future disputes and litigation relating to the Settlement Agreement which may result in substantial legal fees and other costs to the Parties.

G.    Nothing in this Agreement waives, limits, or releases any claims occurring after the date of execution of the Settlement Agreement which are unrelated to the Lawsuit.

**NOW, THEREFORE**, in consideration of the mutual terms, promises, covenants and conditions contained herein and for other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties, and each of them, agree as follows:

1.0    <u>Incorporation of Recitals</u>.  The foregoing recitals are a part of this Agreement and are hereby incorporated by reference as though set forth in full.

2.0    <u>Mutual Release</u>.

2.1    <u>Mutual Release—District and Ms. Mares</u>.  This Agreement resolves any and all issues and claims between Ms. Mares, Courtney Mares, and any and all of their successors, heirs, and assigns, and the District, the District's agents, employees and its Board members, for any and all claims, demands, damages, debts, liabilities, obligations, contracts, agreements, accounts, causes of action, costs and suits of whatever nature, character, or description, whether known or unknown, and whether anticipated or unanticipated, which the Parties have, claim to have, or may hereafter claim to have against the persons and entities described in this paragraph by reason of any agreement, contract, fact, act or omission and claims arising out of or in any way relating to the facts and allegations in The Lawsuit.

2.2    <u>Acknowledgement and Waivers</u>.  The Parties each acknowledge their joint intention that, upon execution by each of the Parties, this Agreement shall be effective as a full and final accord and satisfaction, and settlement of, and as a bar to, each and every claim which any Party now has or has had in the past, or might have in the future against any person or entity related to the matters arising out of or in any way related to The Lawsuit.  In connection with such waiver and relinquishment, the Parties acknowledge that they or their attorneys may hereafter discover facts that they and/or their attorneys now know or believe to be true with respect to the subject matters of this Agreement, but that it is the intention that the mutual release herein given shall be and remains in full force and effect, notwithstanding the discovery of any such different or additional facts.  Therefore, the Parties acknowledge that they have been informed by their attorneys of, and/or that they are familiar with, section 1542 of the Civil Code, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties hereby waive and relinquish all rights and benefits they may have or might have under section 1542 of the Civil Code to the full extent that they may lawfully waive all such rights and benefits pertaining to the subject matter of this Agreement.

3.0    <u>No Admission of Liability</u>.  The Parties acknowledge and agree that no party, by providing the consideration described herein, or by entering into this Agreement, has admitted to any unlawful or improper conduct or liability to any party.

4.0    <u>Consideration</u>.  As further consideration for the mutual releases and other covenants contained herein, the Parties further agree as follows:

4.1    Contingent upon approval of this Agreement by the District's governing board, District agrees to reimburse Ms. Mares the amount of $41,710.00, inclusive of any and all

attorney's fees, costs, expenses, and/or interest as full and final settlement of all claims related to and/or in any way arising out of the Settlement Agreement and The Lawsuit. Said reimbursement will be based upon documentation already provided to the District and, within 45 business days of full execution of this Agreement, will be made payable to the LAW OFFICES OF ELLEN DOWD CLIENT TRUST ACCOUNT.

        4.2    Ms. `Mares agrees that within three business days of the District's execution of this Agreement, Ms. Mares will dismiss with prejudice The Lawsuit.

    Expenses, Fees, and Costs. Each party to this Agreement shall bear all of his, her, or its own attorney's fees, costs and expenses.

    5.0    Non-Assignment of Claims. The Parties represent and warrant that they have not previously assigned or transferred, or purported to assign or transfer, in whole or in part, any claim, demand, action, cause of action or other right herein released or discharged, and that no person or entity has or has asserted any right to receive, in whole, or in part, the payment to be made pursuant to this Agreement.

    6.0    Integration Clause. Each of the parties hereto acknowledge that no other party or any agent or attorney or any of the parties has made any promise, representation or warranty whatsoever, express or implied, not contained herein concerning the subject matter hereof to induce any party to execute this Agreement in reliance upon any such promise, representation or warranty not contained herein.

    7.0    Counterparts. This Agreement may be executed in any number of counterparts, any of which shall be deemed to be the original if fully executed by both of the Parties. This Agreement may be executed and delivered by facsimile and, when fully executed, delivered, and approved by the District's governing board, shall be binding and enforceable.

    8.0    Confidentiality. The Parties agree that this Agreement shall remain strictly confidential. Notwithstanding the foregoing, the Parties are free to disclose the terms of this Agreement to their attorney(s) and may disclose the terms of this Agreement for purposes of implementation and enforcement of this Agreement.

    9.0    Severability. Should any provision of this Agreement be declared or determined by any court of competent jurisdiction to be illegal, invalid, or unenforceable, the legality, validity, and enforceability of the remaining parts, terms or provisions shall not be affected thereby and said illegal, unenforceable or invalid part, term, or provision shall be deemed not to be part of this Agreement.

THE PARTIES HAVE CAREFULLY READ AND FULLY UNDERSTAND THE TERMS, NATURE AND EFFECT OF THE FOREGOING AGREEMENT, WHICH THEY VOLUNTARILY EXECUTED IN GOOD FAITH AND DEEMED TO BE A FAIR AND EQUITABLE SETTLEMENT OF THE DISPUTE. THE DISTRICT AND MS. MARES HAVE BEEN GIVEN AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL OF THEIR CHOICE REGARDING THE FOREGOING AGREEMENT.

WHEREFORE. the Parties execute this Agreement and make it fully effective as of the
te and year written below.

ted:_ _____

CHULA VISTA ELEMENTARY SCHOOL
DISTRICT

By: _____
Patricia Ludi, Executive Director

ted: _ 3/6/07

By: _____
Jill Mares

proved as to form:

ted:_ _____

ATKINSON, ANDELSON, LOYA, RUUD &
ROMO

By:_ _____
Justin R. Shinnefield
Attorneys for Chula Vista Elementary
School District

ed:_ 3/6/07

By: _____
Ellen Dowd
Attorney for Jill Mares



WHEREFORE, the Parties execute this Agreement and make it fully effective as of the date and year written below.

Dated:_____

CHULA VISTA ELEMENTARY SCHOOL DISTRICT

By: _____
     Patricia Ludi, Executive Director

Dated:_____

By:_____
     Jill Mares

Approved as to form:

Dated: *March 8, 2007*

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By: _____ FOR
     Justin R. Shinnefield
     Attorneys for Chula Vista Elementary School District

Dated:_____

By:_____
     Ellen Dowd
     Attorney for Jill Mares

*WHEREFORE, the Parties execute this Agreement and make it fully effective as of the date and year written below.

Dated: __3-9-07_____

CHULA VISTA ELEMENTARY SCHOOL DISTRICT

By: _Patricia Ludi_____
    Patricia Ludi, Executive Director

Dated: _____

By: _____
    Jill Mares

Approved as to form:

Dated: _____

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By: _____
    Justin R. Shinnefield
    Attorneys for Chula Vista Elementary
    School District

Dated: _____

By: _____
    Ellen Dowd
    Attorney for Jill Mares

# UNITED STATES
## DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 144323    — SR
* * C O P Y * *
November 08, 2007
14:43:58

### Civ Fil Non-Pris
USAO #.: 07CV2144 CIV. FIL.
Judge..: JEFFREY T MILLER
Amount.:                    $350.00 CK
Check#.: BC#197124

Total—>  $350.00

FROM: MARES V. CHULA VISTA ELEM.
      SCHOOL DIST.
      CIVIL FILING

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

JILL MARES, mother of CM, a Minor

**DEFENDANTS**

CHULA VISTA ELEMENTARY SCHOOL DISTRICT, a local Educational Agency

FILED
NOV -8 PM 2: 45
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

07CV 2144 JM (AJB)

**(b)** County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   San Diego
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Ellen Dowd, Esq.  SBN 141206  858-342-8360
2658 Del Mar Heights Road # 228, Del Mar, CA 92014

Attorneys (If Known)

Justin Shinnefield, Esq.  562-653-3200
17871 Park Plaza Drive, Ste. 200, Cerritos, CA 90703

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
20 U.S.C. Sec. 1415, et seq.

Brief description of cause:
Attorney Fees and related relief for prevailing party status under Individuals with Disabilities Education Act.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 68,286.46

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE  Hon. John A. Houston    DOCKET NUMBER  07CV1321 JAH (LSP)

DATE
10/31/2007

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 144383    AMOUNT 350.    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

11/8/07

CR